STATE v. ED. C. CRAFT ET ALS.

(Filed 16 December, 1914.)

1. **Criminal Law—Conspiracy—Necessaries of Food—Common Law—Reasonable Profits.**

An agreement among dealers in a necessary article of food, to raise its price, is an indictable offense at the common law, and the evidence in this case being that dealers controlling 60 per cent of the supply of milk in a town having by a written agreement raised its price, testimony is irrelevant that a dealer not a party to the agreement had also raised the price of his milk to his customers, or whether the agreement was reasonble or necessary for the article to yield a profit in its sale.

2. **Same—Evidence.**

Upon trial for conspiracy among dealers to sell milk in a town at an advanced price, it is proper to show by competent testimony of a witness that the price was consequently advanced.

3. **Criminal Law—Indictment—Proof—Immaterial Variance.**

A variance between the charge of an indictment that the defendants conspired together to raise the price of milk to 13 cents per quart, and the proof that it was raised to 12½ cents per quart, is immaterial, the fact that the price was raised in consequence of the agreement being controlling.

4. **Criminal Law—Indictment, Form of—Interpretation of Statutes.**

An indictment is sufficient in form under Revisal, 3254, which charges the offense "in a plain, intelligible, and sufficient manner"; and where the

indictment is for an offense at common law it will not be held fatally defective that the indictment charged the offense as being "against the form of the statute and also against the peace and dignity of the State."

5. **Criminal Law—Conspiracy to Raise Price—Intent—Evidence.**
    Upon the trial for a conspiracy to raise the price of milk in a community, the only question presented is whether the defendants had so agreed, and if, in consequence, they raised the price, the intent to raise the price being the criminal intent which makes the offense.

6. **Criminal Law—Admissions—Instructions—Directing Verdict.**
    When upon the trial for conspiracy among dealers to raise the price of · milk in a certain community the defendants admit entering into the agreement and the consequent raising of the price, it is proper, and not objectionable as directing a verdict, for the judge to relate the admission to the jury and instruct them that thereunder the defendants would be guilty.

7. **Criminal Law — Conspiracy to Raise Price — Common Law — Statutory Offense—Interpretation of Statutes—Appeal and Error—Harmless Error.**
    A conspiracy among dealers to raise the price of a necessary article of food being indictable under the common law, it is not reversible error for the trial judge to exclusively so regard it in the conduct of the trial and erroneously instruct the jury that it was not a statutory offense, though in fact it was so made by chapter 41, Laws 1913, secs. 1, 2, and 3.

APPEAL by defendants from *Cooke, J.,* at May Term, 1914, of NEW HANOVER.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*Woodus Kellum and Herbert McClammy for defendants.*

CLARK, C. J.   The indictment charges that Ed. C. Craft and others (naming them), "being dealers and distributers of milk and carrying on and conducting such business severally and independently each from the other, but controlling and handling in the aggregate a large supply of the fresh milk sold for human consumption and used within the city of Wilmington and county of New Hanover, did, on or about 20 October, 1913, within the State and county aforesaid, knowingly, wickedly, and unlawfully conspire, contract, and agree among themselves, and with each other, not to sell fresh milk to consumers at retail for less than a certain price, towit, the sum of 13 cents per quart, with a view to raise the price of such article of necessity, and by such conspiracy and agreement to unfairly stimulate the market price of such article in which they were dealing, and with a view to-lessen and destroy full and free competition in the sale thereof, . . . and in pursuance of the aforesaid conspiracy, understanding, and agreement, did subsequently, towit, on

168—14

or about 1 November, 1913, severally increase the price of their milk sold at retail to consumers within the city and county aforesaid from 10 cents per quart to 13 cents per quart."

A verdict of not guilty was entered against one of the defendants, George W. Branch, who then testified for the State that he and the other defendants signed the following paper, which afterwards appeared in the *Morning Star.* The paper which was put in evidence is as follows:

"*To the Public:* We, the undersigned dairymen of New.Hanover County, desire to notify our customers and patrons and the public generally that on and after 1 November, 1913, it will be impossible to furnish milk to our customers for less than 12½ cents per quart for bottle milk at retail, and milk in cans at 40 cents per gallon. We deplore the issuance of this notice more than our customers do to receive it, but on account of the high cost of labor and of the enormous prices of hay and grain making it impossible to sell milk at the present price. We deplore the fact that conditions compel us to pursue this course, but we are compelled to issue this notice or get out of business, as we are losing money each day we continue in the same. We desire, however, to state that as soon as labor becomes cheaper and the price of grain and hay is decreased, we will lower the price of milk in proportion. Thanking our customers for past favors and assuring them of our high appreciation of the same, wishing to continue to serve them in the future, we beg to remain, Respectfully."

(Here follow the signatures of Edward C. Craft and the other defendants.)

Branch further testified that prior to that time he had charged 10 cents per quart for milk and afterwards he charged 12½ cents, and that he heard the other defendants say after the paper was signed that they sold milk at 12½ cents.

The defendants are not indicted for raising the price of milk, which each of them had the right to do, if done without agreement and combination with others; nor are they indicted for agreeing to create a monopoly and crush competitors; but they are charged with conspiring and agreeing to raise the price of milk.

Such a combination was indictable at common law. The subject is one of vital interest at the present time, and has thus been discussed by *Chief Justice White* in *Standard Oil Co. v. United States,* 221 U. S. (at p. 58), where he says for the Court: "Without going into detail, and but very briefly surveying the whole field, it may be with accuracy said that the dread of enhancement of prices and of other wrongs which it was thought would flow from the undue limitation on competitive conditions caused by contracts, or other acts of individuals or corporations, led as

a matter of public policy to the prohibition, or treating as illegal, all contracts or acts which were unreasonably restrictive of competitive conditions, either from the nature or character of the contract or act or where the surrounding circumstances were such as to justify the conclusion that they had not been entered into or performed with the legitimate purpose of reasonably forwarding personal interest and developing trade, but, on the contrary, were of such character as to give rise to the inference or presumption that they had been entered into or done with the intent to do wrong to the general public and to limit the right of individuals, thus restraining the free flow of commerce and tending to bring about the evils, such as enhancement of prices, which were considered to be against public policy." To the same effect is the opinion in *U. S. v. American Tobacco Co.,* 221 U. S., at p. 179.

The authorities are thus summed up, 27 Cyc., 891: "From the earliest times it was considered a serious matter if several combined to control trade or enhance prices." It is also said, 8 Cyc., 634, citing authorities: "It is an indictable conspiracy at common law for persons dealing in a commodity which is one of the necessaries of life to bind themselves under a penalty not to sell such commodity at less than a designated price." To same purport, Spelling on Trusts, sec. 52.

Exception 2 was to the exclusion of the question whether a milk dealer, McEachern, not one of the defendants, sold his milk from 12 cents to 15 cents. Exception 3 was to the exclusion of the question how many milk dealers the witness knew in New Hanover County. Exception 4 was to the exclusion of the question whether the witness was capable of forming an opinion satisfactory to himself whether 12½ cents was a reasonable price. Exceptions 5 and 6 are to the exclusion of the inquiry whether there was a dairyman engaged in the business in that county who had land sufficient to make enough food for his cattle to eat.

A conspiracy to raise the prices of the necessaries of life being a crime at common law, it could be no defense to show that another person than one of the conspirators sold the same commodity at as high a price as these defendants had agreed upon, or that the witness might think the price agreed on a reasonable one, or that the article could not be produced profitably at less than the price agreed on, in view of the conditions under which the defendants were carrying on the business. The indictment is not for raising the price, but for the combination and agreement to do so.

Exceptions 7 and 8 are to permitting the witness to say that he had heard the defendants say after the agreement was signed that they sold milk thereafter at 12½ cents. This was competent. Besides, the judge

states in the case on appeal: "The defendants admitted that in consequence of the said agreement, they raised the price of milk from 10 cents to 12½ cents a quart."

The exception for an alleged variance between the indictment and proof, in that the allegation was that the defendants agreed to raise the price of milk to 13 cents and the proof showed that they sold at 12½ cents, cannot be sustained. The gist of the charge is the unlawful agreement and combination to raise the price, and the proof is that the defendants did so agree, and in consequence of such agreement did raise the price. Whether the agreement and raise was to 13 cents or to 12½ cents is immaterial. "A variance will not result where the allegations and proof, although variant, are of the same legal signification." 22 Cyc., 456, citing among others *S. v. Brown,* 82 N. C., 585. An immaterial variance in an indictment is not fatal. *S. v. R. R.,* 149 N. C., 508; *S. v. Ridge,* 125 N. C., 655.

The exception to the conclusion of the indictment, "against the form of the statute," cannot be sustained. In fact, the indictment concludes both "against the form of the statute and also against the peace and dignity of the State." But we have long outgrown such matters as that, and it is held that the conclusion is a mere matter of form and surplusage. *S. v. Kirkman,* 104 N. C., 911. Especially is this so (as is said in *S. v. Kirkman, supra*) since the statute, now Revisal, 3254, which makes the bill "sufficient in form, for all intents and purposes, if it expresses the *charge* against the defendant in a plain, intelligible, and explicit manner," and, if that is done, forbids that the bill should either be "quashed or judgment arrested by reason of any informality or refinement." *S. v. Kirkman* has been repeatedly cited since with approval, *S. v. Harris,* 106 N. C., 688; *S. v. Arnold,* 107 N. C., 863; *S. v. Peters, ib.,* 882; *S. v. Peeples,* 108 N. C., 768; *S. v. Call,* 121 N. C., 649; *S. v. Hester,* 122 N. C., 1052.

The evidence was that about 60 per cent of the output of milk for retailing in Wilmington was controlled by the defendants. The court properly refused the motion to nonsuit. The defendants also asked the court to hold that the jury could not convict unless they were satisfied that it was the intention of the defendants to violate the law; but the court held that it was not a question of intent, and that it was not for the jury to consider the question of intent; that the only question to be considered was whether or not the defendants signed the agreement and in consequence of the agreement raised the price of milk. In this there was no error. It has been repeatedly held that when an act forbidden by law is intentionally done, the intent to do the act is the criminal intent which makes the offense. *S. v. McLean,* 121 N. C., 589; *S. v. Smith,* 93 N. C., 516; *S. v. Heaton,* 77 N. C., 505; *S. v. Presnell,* 34 N. C., 103.

The court charged the jury: "I have not the making of the law. I can only enforce it. My interpretation of the law is this: The defendants are indicted under the common law—we have no statute that covers it—and at common law a combination of this kind between parties and individuals which has been read to you, and it being admitted in consequence of that agreement the price of milk was advanced from 10 cents to 12½ cents, I tell you upon the agreement and the admission that the defendants are guilty. You can take the case and return your verdict." The jury retired and afterwards returned a verdict of guilty against each of the defendants. The court imposed a fine of $10 on each.

The evidence was uncontradicted that the defendants signed the agreement to raise the price of milk; that together they controlled 60 per cent of the output of that necessary article in Wilmington, and it was admitted by them that in consequence of the said agreement they raised the price of milk from 10 cents to 12½ cents per quart. The court did not "direct a verdict" to be entered, but told the jury that such agreement and admission of the defendants would make the defendants guilty. The jury took the case and later returned their verdict in accordance with the opinion of the court upon these facts, which were not controverted. This the court could do (*S. v. Riley,* 113 N. C., 648, where the distinction is pointed out).

In *Swift v. United States,* 196 U. S., 375, which was an action to enjoin violations of the Federal antitrust act with respect to sales of fresh meat, the Court said: "The defendants cannot be ordered to compete, but they properly can be forbidden to give directions, or make agreements, not to compete."

"A combination between independent dealers to prevent competition between themselves in the sale of an article of prime necessity is in the contemplation of law an act inimical to trade or commerce, without regard to what may be done under and in pursuance of it, and although the object of such combination was merely the due protection of the parties against ruinous rivalry, and no attempt was made to charge undue or excessive prices, where it appears that the parties acted under such agreement, an indictment for conspiracy is sustainable." *People v. Sheldon,* 139 N. Y., 251. That was an indictment against retail coal dealers for entering into an agreement to organize a coal exchange and fix prices, below which no member was permitted to sell.

In *Coal Co. v. People,* 214 Ill., 421, it was held: "A combination between independent producers of coal to prevent competition in its sale and to regulate and fix the price at which coal should be sold in the State of Illinois is inimical to trade and commerce, detrimental to the public, and unlawful, and amounts to a common-law conspiracy, regardless of what may be done in furtherance of the conspiracy."

In *Harris v. Commonwealth,* 113 Va., 746; Anno. Cas., 1913, E. 597, the Court held the same principle as.above, but ruled that insurance not being an article of merchandise, or manufacture, nor one of the necessaries of life, nor of prime necessity within the letter or spirit of the law against engrossing, an indictment for a conspiracy to raise insurance rates could not be maintained in the absence of a statute making it a criminal offense. The decision, however, fully recognizes the rule that a combination in restraint of trade in the necessaries of life is a conspiracy for an unlawful purpose at common law and punishable as such.

In *Sanford v. People,* 121 Ill. App., 619, it was held that a combination to enable members thereof to dictate prices in a necessary article (in that case the sale of coal to consumers) was in violation of the common law and of the State statute against trusts.

In *S. v. Dreany,* 65 Kan., 292, though the indictment was dismissed on the ground that there was no evidence to show that the defendants had entered into an unlawful agreement to fix prices to be paid for grain in a ·certain town, it was recognized that this was an offense at common law.

This whole subject has been so fully discussed in the *Standard Oil* and *American Tobacco Company cases,* both in 221 U. S. and above cited, and in other cases before the United States Supreme Court, that it would be useless repetition to go further.

The solicitor stated that he was proceeding at common law, and the judge also told the jury that this was an offense only at common law, and that we have no statute on the subject. Their attention probably was not called to.chapter 41, Laws 1913. Section 1 of that chapter provides: "Every contract, combination in the form of trusts or otherwise, or conspiracy in the 'restraint of trade or commerce in the State of North Carolina is hereby declared to be illegal." This section further makes it indictable. Section 2 provides: "Any act, contract, combination in the form of trusts, or conspiracy in restraint of trade or commerce. which violates the principles of the common law is hereby declared to be in violation of section 1 of this act." Section 3 makes all such contracts, combinations, and conspiracies unreasonable and illegal.

The defendants, however, cannot take advantage of the fact that the judge and solicitor considered the action of the defendants illegal only from the standpoint of the common law.

Upon consideration of the whole case we find