STATE OF NORTH CAROLINA v. LORAN RICHARD CHRISTOPHER, JR.

No. 8125SC1358

(Filed 21 September 1982)

1. **Indictment and Warrant § 17.4— variance between averment and proof—ownership**

Defendant failed to show that he was misled by a variance between the indictment and proof at trial or that he was hampered in any way in presenting his defense where the indictment alleged ownership of hams in "Mom (n) Pops Smokehouse, Inc., a corporation, located in Claremont, North Carolina," and at trial the owner of the stolen hams was referred to by various witnesses as Mom & Pop's Incorporated, Mom & Pop's, Mom & Pop's Ham House and Mom & Pop's Smokehouse in Claremont.

State v. Christopher

2. **Indictment and Warrant § 17.2— conspiracy to commit felonious larceny and feloniously receiving stolen goods—variance between date alleged in indictment and proved at trial—prejudicial as to receiving charge**

Where indictments alleged that defendant conspired to commit felonious larceny and feloniously received stolen goods "on or about the 12th day of December, 1980," and at trial, the evidence disclosed that sometime before and during December defendant had several conversations with another person concerning hams and that defendant received stolen hams on a Sunday night in late December, after Christmas, the discrepancy between the date alleged in the indictment and the date shown by the State's evidence was fatal as to the receiving charge. Defendant clearly relied upon the date charged in the indictment by presenting an alibi defense for that date, and introducing evidence tending to show that the receiving charge occurred on a date other than the one charged in the indictment tended to "ensnare [the] defendant and thereby deprive him of an opportunity to adequately present his defense." Since there was evidence that the conspiracy commenced prior to December 1980 and continued through the 14th until late December, there was no fatal variance between the date alleged in the conspiracy indictment and the date shown by State's evidence.

3. **Conspiracy § 6— criminal conspiracy—sufficiency of evidence**

Evidence which tended to show that defendant solicited a person to steal ham from his employer, that defendant received the stolen ham from the person and that defendant paid the person substantially less than the true value of the ham, along with statements to the person that he "was sitting on a gold mine" and that he "could get rid of some ham" if the person "could get some ham," was sufficient for the jury to infer "a mutual, implied understanding" between defendant and the person "to do an unlawful act."

4. **Conspiracy § 7— criminal conspiracy—instructions proper**

The trial court correctly applied the law of conspiracy to the evidence presented on the element of conspiracy which requires that the defendant and his co-conspirator intended at the time their agreement to commit larceny was made that it would be carried out.

5. **Criminal Law § 171.1— defendant convicted of two charges—one conviction vacated—single sentence imposed—judgment appealed from not disturbed**

Although the Court vacated a verdict on a receiving charge as a result of error in defendant's trial, the judgment appealed from was not disturbed since the trial court consolidated the conspiracy and receiving charges for purposes of judgment and imposed a sentence which was within the parameters of the punishment authorized for the crime of conspiracy to commit larceny. G.S. 14-2.

APPEAL by defendant from *Cornelius, Judge.* Judgment entered 13 August 1981 in Superior Court, CATAWBA County. Heard in the Court of Appeals 7 June 1982.

Defendant appeals his conviction of felonious conspiracy to commit larceny and of feloniously receiving stolen goods.

At trial, Johnny McCracken testified that in December of 1980, he was employed as a truck driver for Mom & Pop's Smoke House, a business which bought, cured and processed country hams. He had known the defendant for seven or eight years.

Prior to December of 1980 defendant had remarked several times that McCracken "was sitting on a gold mine." He asked Mc-Cracken if he "could get some ham;" that he "could get rid of some ham" if McCracken could get it. McCracken testified that he stole a pallet containing 110 cases of center ham slices while loading a truck in December. He delivered the ham to his house because "[t]his is where Mr. Christopher was to pick it up." Defendant picked up the ham on a Sunday night in late December, after Christmas, loading it into his station wagon. "There was talk of splitting the profit," but defendant later gave McCracken an old Chevrolet car and $50.

Ray Isenhower, plant manager of Mom & Pop's Smoke House, testified that in mid-December he suspected that a substantial amount of ham had disappeared and began taking inventory in January. The inventory showed a shortage of 249 cases of "centers". Isenhower also testified that Mom & Pop's Smoke House is a wholly owned subsidiary of Western Steer Mom & Pop's, Incorporated.

Tom McCall testified that he knew the defendant as an employee of a brokerage company and that prior to December of 1980 he had purchased food items from defendant for his discount food store. Sometime in December or January, on three different occasions, he purchased from defendant a total of 30 or 40 cases of pre-priced packaged sugar cured Mom & Pop's ham. "[I]t was supposed to be overrun merchandise or mis-shipped merchandise." He received a receipt for the ham in February or March, but it was in a "ficticious name".

Defendant denied selling ham to Tom McCall. He offered an alibi witness who stated that defendant was in Kingsport, Tennessee, with her on the weekend of 12 December 1980. She also testified that she was with the defendant in Hickory, North Carolina the following weekend.

*Attorney General Edmisten, by Assistant Attorney General Richard L. Griffin, for the State.*

*Sigmon, Clark and Mackie, by Jeffrey T. Mackie, for defendant-appellant.*

HILL, Judge.

Defendant contends that error occurred in his trial with respect to both charges. We conclude that the trial court did commit error in connection with the receiving charge but find no merit in defendant's assignments of error in the conspiracy case.

[1] Defendant contends first that there was a fatal variance between the crimes charged in the bills of indictment and the proof of the same with respect to ownership and time.

The indictments allege ownership of the hams in "Mom (n) Pops Smokehouse, Inc., a corporation, located in Claremont, North Carolina." At trial the owner of the stolen hams was referred to by various witnesses as Mom & Pop's Incorporated, Mom & Pop's, Mom & Pop's Ham House and Mom & Pop's Smoke House in Claremont. The owner of the hams was further identified as a wholly owned subsidiary of Western Steer Mom & Pop's, Incorporated. The only variance between the indictment and proof was the omission of any reference to "Mom (n) Pops Smokehouse, Inc.," as alleged in the indictment. Nevertheless, the testimony at trial sufficiently identified the owner of the stolen hams to be the same entity referred to in the indictments and sufficiently established the owner to be a legal entity capable of owning property. Although "evidence in a criminal case must correspond with the allegations of the indictment which are essential and material to charge the offense," 7 Strong's N.C. Index 3rd, Indictment and Warrant § 17, p. 162, " '[a] variance will not result where the allegations and proof, although variant, are of the same legal significance.' [Citations omitted.]" *State v. Craft,* 168 N.C. 208, 212, 83 S.E. 772, 774 (1914). Defendant has not shown that he was misled by the variance or that, having been informed of the charges against him, he was hampered in any way in presenting his defense. *See State v. Martin,* 270 N.C. 286, 154 S.E. 2d 96 (1967); *State v. Currie,* 47 N.C. App. 446, 267 S.E. 2d 390, *cert. denied,* 301 N.C. 237, 283 S.E. 2d 134 (1980).

[2] The indictments further allege that defendant conspired to commit felonious larceny and feloniously received stolen goods "on or about the 12th day of December, 1980." At trial, the evidence disclosed only that sometime before and during December defendant had several conversations with Johnny Mc-Cracken concerning the hams and that defendant received the stolen hams on a Sunday night in late December, after Christmas. Defendant argues that this discrepancy between the time named in the indictments and the time shown by State's evidence constituted a fatal variance requiring dismissal of the charges. We agree with respect to the receiving charge, but not the conspiracy charge.

"Where time is not of the essence of the offense charged . . . a discrepancy between the date alleged in the indictment and the date shown by the State's evidence is ordinarily not fatal. [Citations omitted.] 'But this salutary rule, preventing a defendant who does not rely on time as a defense from using a discrepancy between the time named in the bill and the time shown by the evidence for the State, cannot be used to ensnare a defendant and thereby deprive him of an opportunity to adequately present his defense.' *State v. Whittemore*, 255 N.C. 583, 592, 122 S.E. 2d 396, 403 (1961)." *State v. Locklear*, 33 N.C. App. 647, 653-54, 236 S.E. 2d 376, 380, *discr. rev. denied*, 293 N.C. 363, 237 S.E. 2d 851 (1977).

In the present case, defendant clearly relied upon the date charged in the indictment by presenting an alibi defense for that date. Although he also presented testimony as to his whereabouts on the following weekend, this evidence was apparently introduced to bolster his alibi for the date charged in the indictment. *Cf. State v. Currie, supra* (the defendant presented alibi evidence for the date charged in the indictment and the date shown by the State's evidence); *State v. Locklear, supra* (the defendant presented alibi evidence relating to neither the date charged in the indictment nor the date shown by the State's evidence). On the facts of this case, the introduction of evidence by State tending to show that the receiving offense occurred on a date other than the one charged in the indictment tended to "ensnare [the] defendant and thereby deprive him of an opportunity to adequately present his defense" and constituted a fatal variance between the indictment and the proof. The verdict on the receiving charge must therefore be vacated.

Further error occurred on the receiving charge when the court instructed the jury that defendant could be convicted of that charge if the jury found that he had committed the offense "on or about December the 14th or the latter part of December, 1980." While not required to charge on the date of the offense, a court which does so must charge on the date as shown by the evidence. *See State v. Currie, supra.* The evidence in the present case shows that, if defendant received the stolen hams, he did so in late December, after Christmas. There is no evidence whatsoever that defendant received the hams on 14 December 1980. The court's instruction permitted the jury to disregard the evidence as to when the offense occurred.

Although the court gave the same instruction on the conspiracy charge, it did not constitute error because the evidence at trial showed that the conspiracy commenced prior to December 1980 and continued through the 14th until late December. For the same reason, there was no fatal variance between the date alleged in the conspiracy indictment and the date shown by State's evidence.

[3] Nor is defendant entitled to dismissal of the conspiracy charge because of insufficient evidence, as he contends.

> A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. [Citation omitted.] To constitute a conspiracy it is not necessary that the parties should have come together and agreed in express terms to unite for a common object: " 'A mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense.' " [Citations omitted.] . . . As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed.

*State v. Bindyke*, 288 N.C. 608, 615-16, 220 S.E. 2d 521, 526 (1975) (emphasis original). *Accord State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978).

State's evidence in the present case tended to show that defendant solicited McCracken to steal ham from his employer, that defendant received the stolen ham from McCracken and that defendant paid McCracken substantially less than the true value

of the ham. Defendant argues that because there was no evidence of an express request by defendant that McCracken steal the ham, there was insufficient proof of a conspiracy to do an unlawful act. As previously stated, however, an express agreement need not be shown. Defendant's statements to McCracken that he "was sitting on a gold mine" and that he "could get rid of some ham" if McCracken "could get some ham," considered with the subsequent dealings between defendant and McCracken with regard to the ham, were sufficient for the jury to infer "a mutual, implied understanding" between defendant and McCracken "to do an unlawful act." *See State v. Jackson and State v. Marshall,* 57 N.C. App. 71, 291 S.E. 2d 190, *cert. denied,* 306 N.C. 389, 294 S.E. 2d 216 (1982).

[4] Defendant also assigns error to the court's charge on conspiracy. He concedes that the court correctly charged as to the law of conspiracy but contends that the court failed to correctly apply to the evidence presented the element of conspiracy which requires that the defendant and his co-conspirator intended at the time their agreement to commit the larceny was made that it would be carried out. Our review of the charge reveals no prejudicial error. On the element of intent, the court required the jury to find that "at the time of the taking the defendant and Johnny McCracken intended to deprive Mom & Pop's Ham House of its use permanently pursuant to the agreement. . . ." The Court had previously informed the jury that State was required to prove that defendant and another person intended that their agreement to commit larceny be carried out "at the time it was made." When construed as a whole, the charge correctly required a finding that at the time of his agreement with McCracken, defendant intended for McCracken to commit larceny from his employer pursuant to the agreement.

[5] Although we have vacated the verdict on the receiving charge as a result of error in defendant's trial, the judgment appealed from need not be disturbed.

> Where the jury renders a verdict of guilty on each count of a bill of indictment, an error in the trial or in the charge of the court as to one count is cured by the verdict on the other count where the offenses which are charged are of the same grade and punishable alike, only one sentence is imposed, and

the error relating to one count does not affect the verdict on the other.

*State v. Daniels*, 300 N.C. 105, 115, 265 S.E. 2d 217, 222-23 (1980). Here, the court consolidated the conspiracy and receiving charges for purposes of judgment and imposed a sentence of three years imprisonment, with all but 90 days suspended. Conspiracy to commit larceny and receiving stolen goods are both felonies for which no specific punishment is prescribed by statute. As such, they are both punishable by fine, by imprisonment not exceeding ten years, or both. G.S. 14-2. The single sentence imposed was within the parameters of the punishment authorized for the crime of conspiracy to commit larceny.

In the judgment entered, we find

No error.

Judge MARTIN (Harry C.) concurred prior to 3 August 1982.

Judge BECTON concurs.