STATE v. JOE SWINDELL.

(Filed 18 February, 1925.)

**Constitutional Law—Carnal Knowledge of Female Child—Punishment—Discretion of Court—Statutes.**

Upon conviction of a male person for violating the provisions of C. S., 4209 (Vol. III), for carnally knowing a female child thirteen years of age, who had not previously had sexual intercourse with any person, making the offense a felony: *Held*, a sentence of hard labor at the State's Prison for thirty years is not a cruel or unusual punishment prohibited by our Constitution, Art. I, sec. 14, or an abuse of the sound discretion of the trial judge, given him in such cases by the statute, under the evidence of this case.

APPEAL by defendant from *Sinclair, J.*, at November Term, 1924, of PASQUOTANK.

The material facts are stated in the opinion.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*T. J. Markham and Aydlett & Simpson for defendant.*

CLARKSON, J. The defendant was indicted under C. S., 4209 (Vol. III), which is as follows:

"If any male person shall carnally know or abuse any female child, over twelve and under sixteen years of age, who has never before had sexual intercourse with any person, he shall be guilty of a felony and shall be fined or imprisoned in the discretion of the court; and any

female person who shall carnally know any male child under the age of sixteen years shall be guilty of a misdemeanor and shall be fined or imprisoned in the discretion of the court: *Provided,* that if the offenders shall be married or shall thereafter marry, such marriage shall be a bar to further prosecution."

The charge in the indictment is that the defendant, "with force and arms, at and in the county aforesaid, unlawfully, willfully and feloniously, did carnally know and abuse Margaret (naming her), a female child, over twelve and under sixteen years of age, she never before having had sexual intercourse with any person," etc.

The essentials of the crime in this case are: (1) carnally know or abuse a female child, (2) over twelve and under sixteen years of age, (3) the female child never before having had sexual intercourse with any person.

The first thirteen exceptions and assignments of error by defendant (first abandoned) was to the competency of evidence. We think they are without merit, and cannot be sustained. We would consider them *seriatim,* but we are unable to do so, intelligently, without setting forth the evidence, which is so shocking, indecent and revolting that we think it unnecessary for the just determination of this case.

The exception and assignment of error No. 14 is the only serious one we have to consider: "To the judgment of thirty years *in the State's Prison and hard labor."*

Constitution of North Carolina, Art. I, sec. 14, is as follows: "Excessive bail should not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted."

The statute under which defendant is indicted says: "He shall be guilty of a felony and shall be fined or imprisoned in the discretion of the court."

This Court, in a unanimous opinion by *Clark, J.,* in *S. v. Rippy,* 127 N. C., p. 517, construes C. S., 4172 (Code, 1096), and chapter 295, Laws 1895 (as amended, is C. S., 4209, *supra,* under which defendant is indicted). The Court, in that case, said: "The only exception in the transcript is that Code, sec. 1096, provides that persons convicted of felonies for which 'no specific punishment is prescribed by statute' shall be imprisoned in the county jail or penitentiary not exceeding two years, and be fined, in the discretion of the court. But the penalty prescribed by chapter 295, Laws 1895, is specific—fully as much so as that laid down in Code, sec. 1096, and is different in kind. The former authorizes fine or imprisonment in the penitentiary, at the discretion of the court. The latter, a fine, in the discretion of the court, and imprisonment in jail or the penitentiary, not exceeding two years," etc. Under the construction given in the *Rippy case,* the discretion of the

court below is limited only to the constitutional prohibition against "cruel or unusual punishment."

It is set forth in the record that "The court stated the contentions of the State and the defendant, and charged the jury according to law. The jury returned a verdict of guilty, as charged in the bill of indictment. Upon the return of the verdict, the defendant's counsel asked the court to be merciful in his judgment, contending that while the jury had said the defendant was guilty, he himself insisted that he was not guilty, and that while he was in jail, on Thursday, 21 August, during the term of Superior Court, and upon the day set for his trial, when the sheriff had gone to the jail, by direction of the court, to bring the defendant to trial, one J. B. Farrior, grandfather of Margaret .............., had followed the sheriff into the jail, the said Farrior being unknown to the jailer, and that he went to the cell in which the defendant was confined, spoke to him, shook hands with him, then drew a pistol and shot him down in his cell, and that for several days his life was despaired of, and he was taken to a hospital; that the ball entered his back, injuring his spinal column, producing paralysis, and that the doctor who attended him testified at the trial that he could not tell whether he would finally recover or not; that the defendant was on crutches at the time of the trial, and defendant's counsel asked the court to take all these matters into consideration. The court replied that it was impossible to tell whether the defendant would finally recover or not, and that this was a matter which the court would have to leave to other authorities, to be decided by future developments. The court sentenced the defendant to the State's Prison at hard labor for a period of thirty years."

In *S. v. Driver*, 78 N. C., p. 429, it was said: "Thus it appears, both by precedent and by the reason of the thing, and by express constitutional provision, that there is a limit to the power of the judge to punish, even when it is expressly left to his discretion. What the precise limit is cannot be prescribed. The Constitution does not fix it, precedents do not fix it, and we cannot fix it, and it ought not to be fixed. It ought to be left to the judge who inflicts it, under the circumstances of each case, and it ought not to be abused, and has not been abused (grossly) in a century, and probably will not be in a century to come, and it ought not to be interfered with," except in case where the abuse is palpable.

There is no exception to the charge of the court. The jury believed the State's evidence, and by their verdict found defendant was guilty, "beyond a reasonable doubt." The facts are found, and on these facts the court below, under the statute, in its discretion, sentenced the defendant. The punishment is severe.

To punish a fellow human being is a fearful responsibility, but, for the well-being of society, for orderly government, for the peace, happiness and security of the commonwealth, this duty cannot be shirked, but must be met in a spirit of sober judgment. In the present case it was in the discretion of the trial court. Is it cruel or unusual, and did the court below abuse its discretion? We cannot so hold. The defendant, a divorced man, twenty-six years of age, his young wife obtaining the divorce, had abandoned his own flesh and blood, his son, and contributed nothing to his support. His own witnesses testified that he was a man of bad character. One of his witnesses testified that his character was "bad for women." He paid a young woman, after his marriage, but while not living with his wife, $100.00 for a child he was accused of being the father of. He said: "That he left New Bern about the time two girls were missing from there, but that he had nothing to do with that; that it was in a local paper about the defendant's riding out with another couple and another woman, and one of the parties held the baby while the defendant and the married woman went in the woods, but that the defendant was not guilty; that it was untrue as against him." He had the implement and weapon of the seducer and debaucher, the rubber with fangs. So bent on destroying his prey that he told Boetcher, after the machine was stuck and he went after another, "he wasn't going to be cheated out of his good time yet." He went back and did the foul deed, and then, after debauching the child, he bragged to Steger that he had gotten this "society stuff." He knew the depth of wrong and degradation. He told Barkley: "Alex, I know I have reached bottom tonight." His words were prophetic. He knew he had gone the limit. From the record, on the trial below, he deliberately committed perjury. The wages of punishment meted to him by the court below was severe, but we cannot, on the evidence, say the court abused its discretion. From the record evidence, Margaret, the young girl, was blameless— trapped and ensnared.

The defendant, a man twenty-six years of age, ensnares a thirteen-year-old girl—innocent and virtuous—and debauches her, under circumstances that would make him guilty at least of such turpitude as amounts in morals to rape. For legal rape the penalty is death.

The record shows that the grandfather of the child shot the defendant while in jail. It was in evidence that the physician could not tell whether the defendant would finally recover or not. The court below had all the facts before it.

Mr. Blackstone (Brown's Blackstone's Commentaries, p. 668) says:

"Object of punishment. Human punishments, in a comprehensive view, are rather calculated to prevent future crimes than to expiate past ones. They tend to the amendment of the offender, or to deprive him

of the power to do future mischief, or to deter others by his example. The prevention of future crimes is thus sought to be effected by amendment, disability or example."

Mr. John H. Wigmore, who wrote the learned treatise on Evidence, has this to say (N. C. Law Review, December, 1924, p. 232, reprinted, with permission of the Illinois Law Review) : "The deterrence theory is the kingdom of the criminal law. The crimes contemplated, but not committed, have the same ratio, or greater, to those actually committed that the submerged base of an iceberg bears to the portion visible above the surface; scientists say it is as 6 to 1. The fear of being overtaken by the law's penalties is, next to morality, what keeps most of us from being offenders, in one way or another. For the professional or habitual criminals, who have ceased to care for social opinion, it is the *only* thing. A lax criminal law means greater yielding to the opportunities to crime. This is common knowledge."

Burns, in his "Epistle to a young friend," has this to say :

> "The fear o' hell's the hangman's whip
> To haud the wretch in order ;
> But where you feel your honour grip,
> Let this aye be your border."

Virtue and honor, to a great extent, is the rock on which society stands; destroy this, and the house is built on sand, soon to crumble.

The evidence shows that the trail of the defendant has been merciless with women. He has wrecked their lives, and at last, in his own language, when he debauched this innocent and virtuous thirteen-year-old girl, "I have reached bottom tonight." This was his judgment of himself shortly after the foul crime he committed. This was the judgment of the court below at the trial.

One of the most pathetic incidents in sacred history—a man who had judged his country for forty years—a man without a blemish. A young lad who served under him was given this message to take to this humane judge: "For I have told him that I will judge his house forever for the iniquity which he knoweth, because his sons made themselves vile, and he restrained them not." 1 Samuel, ch. 3, verse 13.

Though the punishment is great, the protection due to society is greater. The hope is to amend the offender, to deprive him of the opportunity to do future mischief, and, above all, an example to deter others.

On the record we can find

No error.