STATE v. RAY WHITTEMORE.
AND
STATE v. ELMER WHITTEMORE.

(Filed 8 November, 1961.)

**1. Rape § 12—**

Some penetration of the sexual organ of the female by the sexual organ of the male is an essential element of the offense of carnal knowledge by a male person of a female person between the ages of twelve and sixteen. G.S. 14-26.

**2. Crime Against Nature—**

Some penetration of or by the sexual organ is an essential element of the crime against nature, G.S. 14-177, and this essential element of the offense was not affected by G.S. 14-202.1, which supplements the former statute.

**3. Rape § 15; Crime Against Nature—**

Testimony that defendant put his private parts against the private parts of prosecutrix and had his private parts "at" the private parts of prosecutrix, and put his mouth on her private parts, is insufficient, standing alone, to establish the "penetration" constituting an essential element of the offense of carnal knowledge of a female between the ages of twelve and sixteen, or the offense of crime against nature, and in the absence of further evidence on this aspect, defendant's motions to nonsuit must be allowed.

**4. Criminal Law § 71—**

An extrajudicial confession is competent only when made understandingly and voluntarily, and a defendant who has sufficient mental capacity to testify has sufficient mental capacity to confess.

**5. Same—**

It is error for the court upon the challenge of the competency of a confession to refuse to hear evidence on the *voir dire* that defendant was of low mentality, had great imagination, and would believe anything told him, it being the duty of the court to hear and weigh such evidence in determining whether the confession was in fact understandingly and voluntarily made.

**6. Criminal Law § 101—**

The uncorroborated confession of a defendant, standing alone, is insufficient to be submitted to the jury on the question of guilt, but a confession may be corroborated by circumstantial evidence, and it is not required that the evidence *aliunde* the confession be sufficient within itself to establish each element of the *corpus delicti*, but it is sufficient if evidence *aliunde* is explained and given criminal import by the confession as to each essential element.

**7. Rape § 15; Crime Against Nature—**

Evidence that defendant placed his private parts against the private parts of prosecutrix together with a confession by defendant that he rub-

bed his sexual organ through the lips of the sexual organ of the prosecutrix, is sufficient to be submitted to the jury on the question of penetration constituting an esential element of the offenses of crime against nature and the offense of carnal knowledge of a female person between the ages of 12 and 16, the evidence *aliunde* the confession being subject to explanation and interpretation by defendant himself upon the question of penetration.

**8. Indictment and Warrant § 17; Criminal Law § 107; Constitutional Law § 21—**

While time is not ordinarily of the essence of an offense, when the State specifies the date in the indictment and defendant offers evidence of an alibi, relating to such date, the State may not, after the defendant has rested his case, introduce evidence tending to show defendant's commission of the proscribed act on a later date, and an instruction to the effect that the jury might convict if they found beyond a reasonable doubt that defendant committed the act on either date, must be held for prejudicial error as depriving defendant of his constitutional right of opportunity to rebut the State's evidence. Constitution of North Carolina Art. I, sec. 11.

APPEALS by defendants from *Campbell, J.,* April 1961 Criminal Term of BUNCOMBE.

Ray Whittemore was charged in separate bills with commission of two crimes on 19 March 1961: (1) "the abominable and detestable crime against nature with one Barbara _____, age 13," conduct declared criminal by G.S. 14-177; and (2) "did abuse and carnally know Barbara _____ a female child over twelve and under sixteen years of age, who at said time had never before had sexual intercourse with any person, he, the said Ray Whittemore, a male, being at the time over eighteen years of age," conduct declared criminal by G.S. 14-26.

Elmer Whittemore was charged in separate bills with identical crimes on the same date and place with Patricia _____, twelve years of age.

The names of the females are shown in the bills of indictment but are here purposely omitted. They are half sisters. Elmer is the father of Ray.

By consent the cases were consolidated for trial. Verdicts of guilty as to each defendant on each charge were returned. Each defendant was sentenced to prison on each count, the sentences to run concurrently.

*Attorney General Bruton and Assistant Attorney General McGalliard for the State.*

*Don C. Young and Lamar Gudger for defendant appellants.*

RODMAN, J.  Each defendant's motion for nonsuit was overruled. Hence the first question for determination is: Was there any evidence to establish each essential ingredient of each crime?

*Ervin, J.,* in his usual clear-cut and concise manner, stated what it was necessary to prove in order to convict a defendant for violating G.S. 14-26. He said: "Three essential ingredients must coexist to render a male person guilty of the statutory felony of obtaining carnal knowledge of a virtuous girl between the specified ages. They are: (1) The male person must have carnal knowledge of the girl; (2) the girl must be over twelve and under sixteen years of age; and (3) the girl must never before have had sexual intercourse with any person. *S. v. Swindell,* 189 N.C. 151, 126 S.E. 417. The terms 'carnal knowledge' and 'sexual intercourse' are synonymous. There is 'carnal knowledge' or 'sexual intercourse' in a legal sense if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male. It is not necessary that the vagina be entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient. (Citing authorities.)" *S. v. Bowman,* 232 N.C. 374, 61 S.E. 2d 107.

Conduct declared criminal by G.S. 14-177 is sexual intercourse contrary to the order of nature. Proof of penetration of or by the sexual organ is essential to conviction. This interpretation was put on the statute in *State v. Fenner,* 166 N.C. 247, 80 S.E. 970, decided in 1914. The Legislature has not disapproved of the interpretation then given by amending the statute. That interpretation accords with the interpretation generally given to similar statutes. The Supreme Court of Maine said: "(I)t does not follow that every act of sexual perversion is encompassed within the definition of 'the crime against nature' . . . The crime against nature involving mankind is not complete without some penetration, however slight, of a natural orifice of the body. The penetration need not be to any particular distance." *S. v. Pratt,* 116 A. 2d 924; *S. v. Hill,* 176 So. 719 (Miss.); *People v. Angier,* 112 P. 2d 659 (Cal.); *Hopper v. S.,* 302 P. 2d 162 (Okla.); *S. v. Withrow,* 96 S.E. 2d 913 (W. Va.); *Wharton v. S.,* 198 S.E. 823 (Ga.); 81 C.J.S. 371; 48 Am. Jur. 550.

An article entitled "The Law of Crime against Nature" was published in 32 N.C. Law Rev. 312 in 1954. The author traces the history of the statute, takes note of the few times this Court had been called upon to interpret the statute and the need of additional legislation to specifically define criminal sexual conduct. The Legislature, at the session following the publication of this article, enacted c. 764 S.L. 1955, now G.S. 14-202.1. That Act supplements G.S. 14-177. *S. v. Lance,* 244 N.C. 455, 94 S.E. 2d 335. The law as declared in *S. v. Fenner supra,* remains in force.

To support the conviction of defendant Elmer Whittemore the State relies on testimony of Patricia. She testified that he invited her into an uninhabited house. "He then told me to pull off my pants . . . I pulled my pants below my knees. After I pulled my panties down below my knees, he put his privates against mine. He was laying on his back and made me lay down on him. I stayed inside the house about two or three minutes before he told me to pull my panties down. After he went in the house, he pulled his trousers off of one leg and laid down flat on his back on the floor. He made me put my hands on his privates and he put his hand on my privates. He kept it there about two or three minutes; he just left it there. After he had done that for two or three minutes, he put his mouth on my breast and after that he put it on my privates and kept his mouth there about one or two minutes. He just left it there . . . He had his privates at my privates rubbing it up and down. I said at. He did that about one or two minutes . . ."

No matter how disgusting and degrading defendant's conduct as depicted by the witness may have been, his conviction should not be sustained unless the evidence suffices to prove the existence of each essential ingredient of the crimes for which he was being tried. The evidence is insufficient to establish the "penetration" necessary for a conviction under each of the statutes. We conclude the motion of defendant Elmer Whittemore for judgment of nonsuit as to each of the charges for which he was on trial should have been allowed.

Ray Whittemore has suffered from cerebral palsy since birth. He finds it difficult, if not impossible, to get around without assistance. Such relations as he had with Barbara took place in the truck in which he, his father, and the two girls had been riding. Without setting out her testimony in detail with respect to what she did and what defendant Ray Whittemore did, suffice it to say that her testimony substantially duplicates the testimony of Patricia with respect to her relations with the defendant Elmer. Barbara's testimony standing alone, therefore would not suffice to convict the defendant Ray Whittemore of either of the crimes because of the failure to establish penetration.

But the State was not content to rely solely on the testimony of the girls to convict Ray Whittemore. As to him it sought to fortify their testimony by a purported confession.

When the confession was offered, defendant objected and asked to be heard on the question of admissibility in the absence of the jury. The jury was excused. The record discloses this colloquy between counsel and the court:

"MR. YOUNG: Well, sir, if your Honor please, I want to put on some evidence as to the admissibility of anything that he said to him about it.

"COURT: Go ahead and ask him.

"MR. YOUNG: I want to put on some other witnesses.

"COURT: As to whether or not it was a voluntary statement?

"MR. YOUNG: As to whether or not he is capable of making it, knowing what he was doing.

"COURT: He operates a grocery store.

"COURT: What you have brought out so far, the boy is incapable of walking, you haven't brought out anything that he is incapable of talking.

"MR. YOUNG: Yes, sir but this witness doesn't know about that. I think I can show by the doctor, Dr. Waller, here, as to his condition.

"COURT: You mean that he is mentally incompetent?

"MR. YOUNG: Yes, sir.

"COURT: Has he ever been committed?

"MR. YOUNG: No, sir, not that I know of.

"COURT: Ever been adjudicated incompetent?

"MR. YOUNG: Not that I know of.

"COURT: Well, I am going to let it in. This is the first time I have heard the plea of insanity in the case.

"MR. YOUNG: No, sir, I am not pleading insanity. I am pleading inadmissibility of the statement, anything about it.

"COURT: I will overrule the objection. Bring the jury back in."

Thereupon, over defendant's objection, the witness was permitted to testify that on Saturday morning, 8 April, while in jail, Ray Whittemore told him that on Sunday, 19 March, he went to the Moss home where Patricia and Barbara lived; he asked the girls if they wished to ride up the mountain and turn around. Ray then told the witness: "We drove up the mountain and came to an old house. I asked Patsy and Barbara if me and my dad could do it to them, and they said yes . . . After Daddy left with Patsy, Barbara pulled her pants off and I started to play with her privates . . . After we played with each other for a while, I was lying on my back and told her to get up on top, and she did. I took my privates and rubbed it through the lips of her privates."

An extrajudicial confession is competent only when made understandingly and voluntarily. S. v. Davis, 253 N.C. 86, 116 S.E. 2d 365; S. v. Rogers, 233 N.C. 390, 64 S.E. 2d 572. A subnormal mental condition, standing alone, does not render incompetent a confession that is voluntary and understandingly made. If accused has sufficient mental capacity to testify, he has sufficient mental capacity to confess. Artesani v. Gritton, 252 N.C. 463, 113 S.E. 2d 895; S. v. Isom, 243 N.C. 164, 90 S.E. 2d 237, 69 A.L.R. 2d 358; 23 C.J.S. 226-227; 20 Am. Jur. 449. But mental capacity, or rather the lack of such capacity, is an

important factor to be considered with other factors in determining whether in fact the purported confession was voluntary. *Blackburn v. Alabama,* 361 U.S. 199, 80 S. Ct. 274, 4 L. ed. 2d 242; *Fikes v. Alabama,* 352 U.S. 191, 77 S. Ct. 281, 1 L. ed. 2d 246. What confessions are admissible is the subject of an extensive annotation following the *Fikes* case, 1 L. ed. 2d 1735.

Defendant in his brief filed here contends the evidence subsequently offered in his defense clearly establishes the confession was not in fact voluntary and should have been excluded.

The officer to whom the statement was given testified after the confession was admitted: "I do not know whether Ray Whittemore went to school or not. I do know that Ray Whittemore is severely handicapped. I remember that Ray Whittemore asked for aspirin while I was talking with him and I sent and had two aspirins brought to him. Ray Whittemore told me that he was nervous and that he did not sleep well. That was the morning after he spent the night in jail. I do know that he can't get around by himself at all, and when he was put in jail, his crutches were taken away from him. I did not bring Ray Whittemore out of the jail to talk to him, and I wrote up his statement up there in the jail at that time."

Doctors Waller and Atkins, both of whom had attended the defendant Ray testified to his physical and mental condition. Dr. Waller said he did not believe that defendant was normal mentally. He further testified: "There is a difference between insanity and full menticulture. Ray Whittemore is very slow and labored in his speech. He has a very limited vocabulary and is mentally dull. I would say that his IQ is about 80." Dr. Atkins likewise testified that Ray Whittemore did not have normal intelligence but in his opinion is able, within "certain limits" to understand what he is saying and to relate to a limited degree incidents that have occurred. Mrs. Goldie Woody, with five years of experience in teaching handicapped children in a Buncombe County school system, taught defendant Ray for five years. In that period he learned to write his name and learned to read through a Second Grade reader. "He had a great imagination and could be persuaded any way. If you told him anything, he would really believe it."

It is, we think manifest that counsel and the court misunderstood each other as to the basis of defendant's objection. If the court had heard, before admitting the confession, the testimony subsequently given, it would have been his duty to weigh the evidence and determine whether the confession was in fact understandingly and voluntarily made.

Defendant argues that his guilt has not been established even if the purported confession was in fact free and voluntary. His position is that the *corpus delicti* has not been established except by the confession, and a confession cannot be used to prove any essential element of the alleged crime, contending it can only be used to corroborate other evidence sufficient of itself to establish each essential ingredient of the crime. To support his contention he cites and relies upon *S. v. Cope,* 240 N.C. 244, 81 S.E. 2d 773.

Defendant would stretch the *Cope* case far beyond the question then propounded and answered. The question then for decision was: "Is a naked extrajudicial confession, uncorroborated by any other evidence, sufficient to sustain a conviction of a felony?" The answer given is in this language: "In view of the fact that the overwhelming authority in this country is to the effect that a naked extrajudicial confession of guilt by one accused of crime, unaccompanied by any other evidence, is not sufficient to warrant or sustain a conviction, the answer to the first question under consideration should be in the negative."

Evidence to corroborate the confession need not be direct. It may be circumstantial. *S. v. Thomas,* 241 N.C. 337, 85 S.E. 2d 300. While there is difference of opinion in the appellate courts of the country with respect to the necessity for evidence *aliunde* the confession to clearly establish each element of the crime, the weight is, we think, with the rule as stated in *Masse v. U. S.,* 210 F. 2d 418. It is there said: "A conviction cannot be had on the extrajudicial confession of the defendant, unless corroborated by proof *aliunde* of the *corpus delicti.* Full, direct, and positive evidence, however, of the *corpus delicti* is not indispensable. A confession will be sufficient if there be such extrinsic corroborative circumstances, as will, *when taken in connection with the confession,* establish the prisoner's guilt in the minds of the jury beyond a reasonable doubt." *S. v. Morro,* 281 S.W. 720; *S. v. Knowles,* 83 S.W. 1083; *Brower v. S.,* 64 So. 2d 576; *Vanderheiden v. S.,* 57 N.W. 2d 761; *S v. La Louche,* 166 A. 252; *Daeche v. U. S.,* 250 F. 566; *Mills v. S.,* 59 S.W. 2d 147; *Campbell v. Commonwealth,* 75 S.E. 2d 468; *Pearlman v. U.S.,* 10 F. 2d 460; *Opper v. U.S.,* 348 U.S. 84, 99 L. ed. 101, 75 S. Ct. 158, 45 A.L.R. 2d 1308.

We do not think it now necessary to determine the extent to which the corroborating circumstances must go. Suffice it to say that the evidence offered by the State was subject to an explanation and interpretation by defendant himself. As said in *Vanderheiden v. S., supra:* "Circumstances capable of an innocent construction may be interpreted in the light of defendant's admissions, and the fact under investigation be thus given a criminal aspect." We have said that Barbara's use of the word "at" was not, standing alone, sufficient to establish pene-

tration. It left the question too conjectural. But defendant's explanation of what occurred is, we think, sufficient to remove the doubt as to the meaning of the word "at."

If the confession was in fact voluntary, the evidence offered by the State was sufficient to support a conviction.

As noted above, the confession dealt with matters alleged to have occurred on Sunday, 19 March, the date charged in the bill of indictment, but the confession was not limited to matters occurring on that date. It purported to describe similar sexual conduct by both defendants with both girls "on or about April the first." It quotes Ray as saying he discontinued his relations with Barbara on that occasion because he was seen by some boys and knew he was caught. This portion of the confession was admitted over defendant's objection.

The State's evidence prior to the time it offered the confession was limited to 19 March 1961, as charged in the bill of indictment. Both girls definitely fixed that day as the time. Patricia not only fixed the day of the month but the day of the week, Sunday. Barbara specifically testified this was the only time she went with defendants to the Cole place.

To support their pleas of not guilty, each defendant contended he was a man of good character and was not in the vicinity of the place named by the State's witnesses on the day the crimes were alleged to have been committed. Several witnesses testified in support of defendants' contentions. Defendant Elmer was a witness. He denied his or his son's guilt, stating in detail where they were on the day of the crime as stated in the bill of indictment. Defendant Ray did not testify.

After defendants rested, the State offered in rebuttal the testimony of two boys, Kermit Cole and Dan Garrison. The Cole boy testified: "I saw Ray Whittemore and Barbara _____ in the truck about 6:30 in the evening. Barbara was sitting on top of Ray. As we came by the truck, Barbara _____ jumped up." He fixed the time as "about the middle or at the last of March when this happened . . . I do not know what day it was nor what day of the week. We were going to the mountain to get some fence wire. Dan and I had been to school that day and it was not on a Sunday."

Dan Garrison testified: "I went with Kermit to the upper Cole place and we saw the truck. We walked on the right side of the truck and the door was open. We saw Ray and Barbara _____ and Barbara was on top of Ray. Barbara's clothes was off and she jumped up when she saw us."

The court in its charge reviewed the evidence of the defendants to establish an alibi. It charged: "(I)t is incumbent upon the State of North Carolina to satisfy you from the evidence and beyond a reason-

STATE *v.* WHITTEMORE.

able doubt that the defendant Ray Whittemore, on the 19th day of March, 1961 carnally knew or abused Barbara _____, she being over twelve and under sixteen years of age, and she never before having had sexual intercourse with any person, so that before you would be justified or entitled to find the defendant guilty of that offense, it would be incumbent upon the State to satisfy you from the evidence and beyond a reasonable doubt, first, that Barbara _____ was a virtuous girl, that is, she had never before had sexual intercourse with any person."

When the court finished its charge, it inquired:

"COURT: Any further requests from either counsel?

"MR. YOUNG: No, Sir.

"SOLICITOR: Your Honor, I looked for this yesterday and didn't find it until this morning. If it is not too late, in accordance with the decision in *STATE v. GILLYARD*, 246 N.C. 217, and *STATE v. TRIPPE,* in 222 N.C. at 600, the State would ask that an instruction to the effect that time is not of the essence, that if the jury should find that the acts complained of occurred on some other day than that charged in the indictment, it would not relieve the defendant of criminal responsibility. I have those decisions here if your Honor would indulge me a moment.

"COURT: I am going to let the charge stand as I have given."

The jury retired at 10:21. At 12:08 the jury returned, requesting further instructions.

"COURT: Members of the jury, I understand there is a question which you desire to ask?

"JUROR: As to the date of the crime committed do we have to confine our decision to the date of March 19, or can we form a decision that the crime was committed?

"COURT: Members of the jury, with regard to the date, the Court will instruct you that if you are satisfied from this evidence and beyond a reasonable doubt that the crime was committed bearing in mind that with regard to the crime of carnal knowledge it is necessary for the State to satisfy you as to the element that is that the girl in each case that is Barbara _____ in the one case and Patricia _____ in the other case that at the time they had neither of them or the respective one as to the respective defendant had never had sexual intercourse with any other person prior to that time bearing in mind that that is one of the necessary elements of that particular crime; then as far as the date is concerned if your are satisfied from this evidence and beyond a reasonable doubt that the crime or crimes were committed even though it was on a date other than the particular date of March 19, 1961 the Court instructs you that you could return

a verdict of guilty even though the date may not have been that particular day. Does that answer the question?

"JUROR: Yes."

The jury thereupon retired and returned a verdict of guilty at 12:13.

Manifestly the jury was in doubt as to the guilt of defendants of *the* crime charged in the bill of indictment—that is sexual misconduct as described *on 19 March 1961*. It had heard the solicitor request and the court refuse to give an instruction that the time of commission was not a material factor. The State's evidence in chief other than the purported confession of defendant Ray, related to one and only one date on which the prohibited sexual conduct occurred. The confession fixed two dates on which prohibited conduct occurred. This confession was in the possession of the State when the bills were drawn and returned by the grand jury. Notwithstanding the State's knowledge of what Ray had confessed, the bill of indictment did not charge criminal acts committed the last of March or early April.

Defendants prepared for trial relying on the time fixed in the bills. They offered numerous witnesses to prove their claimed alibi. Manifestly the jury was impressed with the evidence offered. They remained out for 1-3/4 hours without agreement; but when the court in effect told them that the date charged was immaterial, they reached a verdict in less than five minutes. The charge in effect told the jury the evidence offered by the defendants was not material on the question of defendants' guilt and in effect told the jury they could convict if the offenses charged occurred the last of March or the first of April.

True the time named in a bill of indictment is not usually an essential ingredient of the crime charged, and the State may prove that it was in fact committed on some other date. G.S. 15-155; *S. v. Bryant,* 228 N.C. 641, 46 S.E. 2d 847; *S. v. Baxley,* 223 N.C. 210, 25 S.E. 2d 621; *S. v Trippe,* 222 N.C. 600, 24 S.E. 2d 340. But this salutary rule, preventing a defendant who does not rely on time as a defense from using a discrepancy between the time named in the bill and the time shown by the evidence for the State, cannot be used to ensnare a defendant and thereby deprive him of an opportunity to adequately present his defense. The State did not contend that there was confusion as to the time named in the bill of indictment. It insisted the date named was in fact the true date; but when defendants' evidence, if believed, would establish their innocence, it then contended the jury could, nevertheless, convict for the subsequent asserted wrongful acts. The testimony of young Cole and Garrison, offered only after defendants had rested, relates to conduct subsequent to that charged in the bill and tends to corroborate the confession. Defendants were without any opportunity at that time to refute the State's evidence in rebuttal.

To permit a conviction on this evidence would do violence to rights guaranteed by our Constitution, Art. I, sec. 11. *S. v. Ray,* 92 N.C. 810; *S. v. Corpening,* 191 N.C. 751, 133 S.E. 14; *S. v. Harbert,* 185 N.C. 760, 118 S.E 6; *S. v. Wilkerson,* 164 N.C. 431, 79 S.E. 888. In *S. v. King,* 50 Wash. 312, 16 Ann. Cas. 322, defendant was charged with obtaining money by false and fraudulent pretenses. His defense was alibi. The trial court, charging the jury with respect to the time fixed in the bill of indictment, said: "I will say in that connection that the exact date is immaterial. It does not make any difference, so far as the crime is concerned, if the defendant committed the crime as charged at any time within the period of three years prior to the time the information was filed." In answering this statement of the trial court, the appellate court said: "The witnesses for the state had fixed the date when the crime was committed as being between the 12th and 15th day of February, 1907. The defense was that the defendant was not the person who obtained the money, and that he was sick at home, unable to leave his room between those dates. The time of the commission of the crime was therefore clearly material. There are many cases where no issue is based upon the time when the crime was committed. In such cases this instruction would be correct, but was misleading and erroneous in this case because the time was definitely fixed by the state, and the defense of an *alibi* was based upon that time. It is difficult to imagine a case where the time of the commission of a crime is not material to the defense of *alibi*." *People v. McCullough,* 101 P. 2d 531; *S. v. Severns,* 125 P. 2d 659; *S. v. Clark,* 146 P. 1107; 53 Am. Jur. 498.

The time elapsed between the alleged offense and the trial was relatively short. The record does not disclose the date of trial, but it was during a two weeks' term which began on 17 April. Under the factual situation depicted by this record we are of the opinion that the time charged in the bill was material and vital to defendants' defense. We hold the court erred in charging otherwise.

As to defendant Elmer

Reversed.

As to defendant Ray

New trial.