STATE OF NORTH CAROLINA v. LORAN RICHARD CHRISTOPHER, JR.

No. 595PA82

(Filed 8 March 1983)

**Indictment and Warrant § 17.2— fatal variance as to time of conspiracy**

    A variance between an indictment charging that defendant conspired "on or about the 12th day of December, 1980" to commit felonious larceny of hams and evidence tending to show that defendant and a co-conspirator had conversations concerning the hams and their value sometime in October or November

and in December of 1980 and that the hams were stolen after Christmas was prejudicial to defendant in light of defendant's evidence that he was elsewhere on the date charged in the indictment, 12 December 1980, since defendant was forced to defend his actions over a period of time much greater than the time specified in the indictment.

Justice MARTIN did not participate in the consideration or decision of this case.

Justice MITCHELL concurring.

Justice MEYER joins in this concurring opinion.

ON defendant's petition for discretionary review of the decision of the Court of Appeals, 58 N.C. App. 788, 295 S.E. 2d 487 (1982) (opinion by *Judge Hill* with *Judge* (now Justice) *Harry C. Martin* and *Judge Becton* concurring), finding no error in the judgment entered by *Cornelius, J.,* on 13 August 1981 in Superior Court, CATAWBA County.

The Court of Appeals vacated defendant's conviction of receiving stolen goods but found no error in defendant's conviction of conspiring to commit felonious larceny. Defendant seeks to vacate the conspiracy conviction on the basis, *inter alia,* that there is a fatal variance between the date of the offense alleged in the indictment and the date presented at trial.

At trial the State's evidence tended to show that Johnny McCracken was employed as a truck driver for Mom and Pop's Smokehouse, Inc. from August 1980 until February 1981. The evidence also showed that Johnny McCracken was acquainted with the defendant and had known defendant for at least seven years. Sometime in October or November of 1980 the defendant mentioned to McCracken that he was "sitting on a gold mine." At some point in December 1980 defendant told McCracken that "he could get rid of some ham if I (McCracken) could get it."

Johnny McCracken admitted to stealing the ham from Mom and Pop's Smokehouse, Inc. sometime in late December, 1980 by having an unauthorized pallet of ham loaded onto his delivery truck. McCracken then took the ham to his house where defendant was supposed to pick it up and in fact did so.

The State's evidence also included the testimony of Tom McCall who stated that defendant delivered to McCall's store several cases of Mom and Pop's Smokehouse, Inc. hams in December 1980 or January 1981. McCall testified that defendant charged him

substantially less than the list price of the hams and the delivery was made through the use of defendant's car. Although the State's evidence failed to show that there was ever any agreement as to how the ham was to be taken, when the ham was to be taken, or how McCracken asked to be paid for his part in the theft, McCracken did testify that sometime after 1 January 1981 he was paid fifty dollars and given a 1972 Chevrolet automobile by defendant.

Defendant's evidence tended to show that on the weekend of 12 December 1980 he was in Kingsport, Tennessee with his girlfriend, Beverly Cole. Ms. Cole testifed that she was also with the defendant on the 19th and 20th of December 1980. Defendant's evidence further showed that the Chevrolet automobile which Johnny McCracken took possession of, was the property of defendant's sister-in-law, Darlene Christopher and had been sold by her to Johnny McCracken for the sum of $350.00.

Defendant testified that he had known Johnny McCracken for at least seven years and that he had on occasion seen McCracken during November and December of 1980. Defendant further testified that his discussions with McCracken were casual and no mention was ever made concerning McCracken "sitting on a gold mine" or concerning defendant's ability to get rid of any hams McCracken might obtain. Defendant further testifed that he never took possession of any hams belonging to Mom and Pop's Smokehouse, Inc., and he never sold any hams to Tom McCall.

At the end of all the evidence the trial judge instructed the jury that they could find defendant guilty of the conspiracy charge if they found that on or about 14 December 1980 or the latter part of 1980 the defendant conspired to commit felonious larceny. The jury found defendant guilty of conspiring to commit felonious larceny. Judge Cornelius imposed a three-year sentence but ordered defendant to serve only 90 days, with the remaining thirty-three months suspended.

Defendant appealed to the Court of Appeals which upheld the conviction of conspiring to commit larceny. From the decision of the Court of Appeals defendant sought discretionary review by this Court pursuant to G.S. 7A-31 which was granted 8 December 1982.

*Sigmon, Clark and Mackie by Jeffrey T. Mackie and Barbara H. Kern, for defendant-appellant.*

*Rufus L. Edmisten, Attorney General, by Richard L. Griffin, for the State.*

COPELAND, Justice.

Under the second question presented for review by the defendant he contends there exists a fatal variance between the date of the conspiracy alleged in the indictment, 12 December 1980, and the date of the conspiracy as shown by the State's evidence at trial. Such a variance, the defendant argues, in light of defendant's alibi defense, is prejudicial. We agree that the variance between the date alleged in the indictment and the date shown by the evidence at trial prejudiced defendant's ability to present a defense to the charge of conspiring to commit larceny.

The bill of indictment alleges that "on or about the 12th day of December, 1980, in Catawba County Loran Richard Christopher, Jr. unlawfully and wilfully did feloniously agree, plan, combine, conspire and confederate with Johnny McCracken . . ." to commit felonious larceny from Mom and Pop's Smokehouse, Inc. The indictment was undoubtedly based primarily on the statements of Johnny McCracken who admitted to stealing the ham from Mom and Pop's Smokehouse, Inc. In a statement to the police Johnny McCracken stated that on or about 14 December 1980 he stole the hams.

As a result of the indictment and Johnny McCracken's statement the defendant prepared his defense for trial in a manner designed to explain via an alibi the impossibility of his involvement in a conspiracy on 12 December 1980 and a theft two days later on 14 December 1980. However, at trial the State did not offer evidence that any criminal activity took place on or about 12 December 1980. Instead the State's chief witness, McCracken, testified that the hams were taken from Mom and Pop's Smokehouse, Inc. sometime after Christmas. As for his testimony concerning the conspiracy McCracken could be no more specific than to say he had conversations with the defendant sometime in October or November and in December. McCracken failed to pinpoint even one specific date on which the planned larceny was discussed or carried out. As a result, the defendant came to trial

prepared to defend his innocence of a crime alleged to have happened around 12 December 1980 and was forced to defend his innocence of a crime which might have occurred over a three months period from October 1980 to January 1981.

In *State v. Trippe*, 222 N.C. 600, 24 S.E. 2d 340 (1943), this Court held that when the date alleged in the indictment is not of the essence of the offense charged a "variance between allegation and proof as to time is not material where no statute of limitations is involved." 222 N.C. at 601, 24 S.E. 2d at 341; *State v. Whittemore*, 255 N.C. 583, 122 S.E. 2d 396 (1961). In *State v. Trippe*, 222 N.C. 600, 24 S.E. 2d 340, the defendant was charged with carnal knowledge of a female under sixteen years of age. For such a crime the date of the act was not essential so long as it was proven that the victim was under the age of sixteen and had no prior sexual behavior.

Much like the crime in *State v. Trippe*, 222 N.C. 600, 24 S.E. 2d 340, the date of the crime of conspiracy to commit larceny is "not of the essence of the offense charged." *State v. Trippe*, 222 N.C. 600, 601, 24 S.E. 2d 340, 341. The crime of conspiracy is complete when there is a meeting of the minds and no overt act is necessary. *State v. Gallimore*, 272 N.C. 528, 158 S.E. 2d at 505 (1968). Although the crime of conspiracy is to be completed upon a meeting of the minds, it may be a continuing crime which extends over a period of years. *State v. Brewer*, 258 N.C. 533, 129 S.E. 2d 262 (1962).

Even though the date in the indictment for crimes like conspiracy is not ordinarily material, to have a rule that allows the State to prove a different date at trial, "cannot be used to ensnare a defendant and thereby deprive him of an opportunity to adequately present his defense." *State v. Whittemore*, 255 N.C. 583, 592, 122 S.E. 2d 396, 403 (1961).

In *State v. Whittemore, supra*, the State presented evidence during its case in chief that the crime was committed on the date alleged in the indictment. Defendant then presented an alibi defense for the date alleged in the indictment. After defendant rested his case the State presented rebuttal evidence tending to show the crime occurred on a date different from the date alleged in the indictment or shown by the State during its case in chief. In *Whittemore* the defendant was clearly disadvantaged because

he was misled by the indictment and the State's evidence as to the dates of the alleged crime. The result being that the State was able to present alternative dates for the crime without allowing defendant an opportunity to defend his innocence as to those dates.

Although the defendant in the case *sub judice* has not been prejudiced in the same manner as the defendant in *Whittemore*, to-wit, not being allowed to explain the alternative dates, the defendant before us was nonetheless prejudiced. The wide ranging discrepancies between the indictment and the State's evidence at trial forced this defendant to explain conversations and actions with a long time acquaintance which in some instances were more than a month from the date alleged in the indictment. The result is a trial by ambush.

We are not unmindful that conspiracy offenses are ongoing crimes which may encompass many months. However, conspiracy crimes may be of very short duration covering less than one day. The indictment suggests the conspiracy occurred on 12 December 1980 and the defense was prepared in the light of this date. However, at trial the State ignored the indictment date and offered vague evidence that the conspiracy occurred over a three months period. The vague testimony of Johnny McCracken left the jury with the impression that this conspiracy began sometime in October or November of 1980 but no specific day, week or even month could be recalled.

As a result of the State's "bait and switch" routine the defendant was forced to defend his actions over a period of time much greater than the time specified in the indictment. Such a disparity in the dates alleged and the dates supported by the evidence at trial, considering the weak testimony offered by the State, leads to prejudicial error. We therefore grant defendant a new trial on his conviction of conspiring to commit larceny.

The defendant's other assignments of error will not likely recur at retrial and will not be discussed.

The decision of the Court of Appeals is reversed and this case remanded to that Court for remand to the Superior Court, Catawba County for a new trial on the charge of conspiring to commit larceny.

Reversed and remanded.

Justice MARTIN did not participate in the consideration or decision of this case.

Justice MITCHELL concurring.

I concur in the result reached by the majority and in the principles of law which I understand the majority to rely upon in reaching its holding. As I understand the majority opinion, the vice in the State's case here is that the State chose in drafting its indictment to tie itself to the one specific date of 12 December 1980 and to allege that the defendant "did feloniously agree, plan, combine, conspire and confederate" on that date. I further understand the majority opinion to interpret the use of the verbs "agree," "plan," "combine," "conspire" and "confederate" to have caused the defendant reasonably to believe that the State contended that he *entered* into the alleged conspiracy on that date. The defendant then justifiably relied upon the misperception induced by the indictment and prepared his defense in the belief that the State would seek to prove his involvement in a conspiracy on that date and no other.

At trial the State's evidence tended to show that the defendant entered into the conspiracy to commit felonious larceny well prior to the specific date alleged in the bill of indictment and remained a party to the conspiracy until a time well after the date alleged in the bill. As I read the majority opinion, the majority views this simply as a case in which the form of the bill of indictment allowed the defendant the reasonable belief that the State was contending that he conspired only on the date alleged in the bill. After the defendant offered evidence in the nature of alibi evidence for the date charged, the State did not attempt to prove that he *entered* into the conspiracy on that date. In other words, the majority treats this as a case in which the failure of the State's proof to match its allegations substantially impaired the defendant's ability to prepare a defense. I agree.

I am concerned, however, that portions of the majority opinion could be misconstrued as changing long established principles of law regarding the somewhat unique offense of criminal conspiracy. I do not believe that the majority opinion is intended to

have or has that effect. In particular, I am concerned that the majority opinion not be misread as indicating that in the present case the evidence was insufficient to show that the defendant entered into a criminal conspiracy to commit larceny prior to 12 December 1980 and continued as a conspirator until the conspiracy was consummated by the actual larceny. The fault is in the bill of indictment, not the evidence presented. The evidence clearly was sufficient in this regard to support a conviction for conspiracy upon a proper bill of indictment giving adequate notice to the defendant which would enable him to adequately prepare a defense.

Conspiracies are continuing offenses which generally occur over a period of time of more than a day. Even though the offense of conspiracy is complete upon the formation of the illegal agreement, the offense continues until the conspiracy is either consummated or abandoned. *State v. Conrad*, 275 N.C. 342, 168 S.E. 2d 39 (1969). A distinction must be made here between the larceny and the criminal conspiracy to commit larceny. In the first, the *corpus delicti* is the act itself; in the latter, it is the meeting of the minds in an agreement to do the act. *See, State v. Whiteside*, 204 N.C. 710, 169 S.E. 711 (1933). As conspiracies are continuing offenses, the better practice in drawing bills of indictment would be to state the dates of the criminal conspiracy as the entire period during which the State contends the defendant was a party to the continuing conspiracy. This may be done by simply stating that the defendant agreed, planned, combined and conspired "from on or about" a particular date "until on or about" a particular date.

Had the bill of indictment in this case been drawn as indicated above, a result different from the one reached by the majority would have been required. The defendant would have known that the State contended that the conspiracy began sometime in October or November of 1980 and continued until at least the end of December of that year. Providing such information in the bill of indictment would assure that the defendant was aware of the necessity of filing a bill of particulars if he desired further and more specific information.

We have previously indicated that, in conspiracy cases, we will encourage our trial courts to allow motions for bills of particulars directing prosecutors to reveal information required to

enable defendants to meet the charges against them, to the extent such information is known to the prosecutors. *State v. Conrad*, 275 N.C. 342, 168 S.E. 2d 39 (1969). The State will frequently not have direct evidence available to it to show the precise date upon which the conspirators entered into the conspiracy. The State can be required, however, to provide the defendant with such information as it has on the issue. *See, id.* The conspiracy need not be proved by direct evidence and may be proved by circumstantial evidence. "It may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *State v. Whiteside*, 204 N.C. 710, 712, 169 S.E. 711, 712 (1933); *quoted with approval in State v. LeDuc*, 306 N.C. 62, 76, 291 S.E. 2d 607, 616 (1982). Therefore, in such cases, the State often will not be able to give the defendant a precise date upon which it contends the conspiracy was formed but will be able to place the defendant in as good a position as the State finds itself. The ultimate issues of whether and on what date a conspiracy has been entered into by the defendant will remain a question for the jury, with the State and the defendant going to trial with equal knowledge.

Even if the defendant did not seek a bill of particulars, a bill of indictment as suggested herein would have informed the defendant that the State contended that the conspiracy charged was a continuing offense occurring over a considerable period of time. He would then have understood that the evidence he actually offered during the trial here, concerning his whereabouts on the weekend of 12 December 1980 and on the 19th and 20th of December, 1980, did not tend to establish an "alibi" in the true sense of that term. In order to establish an alibi, a defendant must offer evidence showing that he was elsewhere at the time of the crime in question and, therefore, could not have committed the crime charged.

The majority holds, and I agree, that under the bill of indictment and the evidence relied upon in this case, the defendant's offer of evidence that he was elsewhere on the *only date* charged in the bill was in the nature of alibi evidence and made the time of the offense material and of the essence. *State v. Whittemore*, 255 N.C. 583, 122 S.E. 2d 396 (1961). Under a bill of indictment that alleged the entire time during which the State contended the con-

spiracy existed, however, time clearly would not have been made of the essence or material by the defendant's "alibi" evidence. Unlike the crimes charged in *Whittemore*, the continuing offense of criminal conspiracy may and often does occur on more than one date. Thus, evidence that the defendant could not have *entered* into the conspiracy on four or five days during the several months the State sought to prove he was engaged in a continuing criminal conspiracy would not have amounted to true "alibi" evidence, as it would not have tended to show that the defendant was elsewhere during the entire time the crime was committed and, therefore, could not possibly have committed the crime. A bill of indictment worded as I have suggested, would have caused the defendant to know that the evidence he intended to and did offer during his trial clearly did not tend to negate the possibility that he was already a party to a criminal conspiracy on the dates for which he prepared his defense. He would have known that, instead, his evidence, at most, had some tendency to show that he did not *enter* into a conspiracy on those dates. Had the bill of indictment given proper notice to the defendant, the defendant simply would have been able to prepare his defense in light of the facts the State sought to prove.

The circumstantial evidence offered by the State was substantial evidence tending to show that the defendant and his alleged co-conspirator had a meeting of the minds sometime between October and the date on which the hams were actually stolen. The State's evidence tended to show that they had conversations concerning the hams and their value as early as October. They had other conversations in the ensuing months. The State's evidence also tended to show that the defendant's alleged co-conspirator stole the hams and delivered them to the defendant who sold them for substantially less than their market value and gave some of the proceeds to the alleged co-conspirator. The crime of conspiracy has been committed when there is a union of wills for the unlawful purpose. "Furthermore, the agreement may be 'a mutual, implied understanding' rather than an express understanding." *State v. LeDuc*, 306 N.C. 62, 75, 291 S.E. 2d 607, 615 (1982). Such an implied understanding need not be proved by direct evidence of acts which precede the completion of the conspiracy. *State v. Locklear*, 8 N.C. App. 535, 174 S.E. 2d 641 (1970). As pointed out by Chief Justice Stacy for this Court:

If four men should meet upon a desert, all coming from different points of the compass, and each carrying upon his shoulder a plank, which exactly fitted and dovetailed with the others so as to form a perfect square, it would be difficult to believe they had not previously been together. At least it would be some evidence tending to support the inference.

*State v. Lea*, 203 N.C. 13, 31, 164 S.E. 737, 747, *petition for reconsideration denied*, 203 N.C. 35, 164 S.E. 749, *cert. denied sub nom. State v. Davis*, 287 U.S. 649, 77 L.Ed. 561, 53 S.Ct. 95 (1932). The evidence introduced by the State constituted substantial circumstantial evidence that the defendant entered into a criminal conspiracy to commit larceny at some point between October and the day the hams were stolen in December. It would be appropriate upon this evidence, therefore, to submit the issue of the defendant's guilt of criminal conspiracy to the jury based upon a proper bill of indictment. Such a bill would be proper if it gave the defendant sufficient notice of the charges against him to enable him to prepare his defense. A proper bill would not permit the defendant to reasonably but erroneously prepare his defense in the belief that the State would offer proof of criminal conduct occurring only on the day for which he offered alibi evidence.

Based upon my understanding of the holding of the Court, as explained herein, I concur.

Justice MEYER joins in this concurring opinion.