STATE OF NORTH CAROLINA v. LARRY LOCKLEAR

No. 7716SC117

(Filed 20 July 1977)

1. **Larceny § 8— possession of recently stolen property — instruction proper**

In a prosecution for felonious larceny and receiving stolen goods, the trial court properly instructed on the doctrine of possession of recently stolen property where the evidence tended to show that copper wire was stolen from a glass company supply yard; wire found in a secluded wooded area was the wire taken from the supply yard; defendant was seen near the wire by officers on two occasions; defendant told his companion that the material was copper from the glass plant; defendant, upon discovering that the wire's insulation was burning, tried to put out the fire, thus exhibiting an intent to exert control over the stolen property; and defendant stopped his attempts to fight the fire and tried to flee when he heard a noise in the woods.

2. **Larceny § 7— proof of corpus delicti**

In a prosecution for felonious larceny of copper wire from a glass company supply yard, testimony by defendant's girl friend that she accompanied defendant and two others to the glass plant on 6 September 1974 was sufficient to raise the inference that the crime took place on 6 September and thereby *prima facie* established the *corpus delicti* as of that date.

3. **Criminal Law § 113.1— conflict in evidence — jury instructions proper**

Where the State's evidence and defendant's evidence conflicted as to the date of the alleged crime, the trial court properly instructed the jury as to the conflict and explained to them that in order to find defendant guilty, they would have to find that the crime took place on 6 September, as the State contended.

4. **Indictment and Warrant § 17.2— variance between indictment and proof — time — no prejudice**

Defendant in a larceny case was not prejudiced by the variance between the date of the crime alleged in the bill of indictment and the date shown by the State's evidence, though he presented an alibi de-

fense which related to neither date, since it was apparent that defendant did not rely on the date charged in the indictment, nor did the variation in the State's evidence deprive him of his right adequately to present his defense.

ON *certiorari* from *Smith, Judge.* Judgment entered 13 January 1976 in Superior Court, SCOTLAND County. Heard in the Court of Appeals 8 June 1977.

Defendant was charged with felonious larceny and receiving stolen goods. He entered pleas of not guilty and was convicted by a jury of felonious larceny. Judgment was entered thereon sentencing defendant to imprisonment for a term of ten years to begin at the expiration of a term which defendant is presently serving for other charges.

The State called as a witness Marcine Jacobs, a girl friend of defendant. She testified, *inter alia,* that she dated defendant for 18 months prior to the alleged larceny. On the night of 6 September 1974, she was riding in defendant's Chevrolet van along with defendant, Jennings Locklear, and Ronald Oxendine. Defendant, who was driving, announced that " . . . he was going to the Libby Owens Ford Glass Plant to pick up some copper." The group stopped at Maxton to purchase wine and proceeded to the glass plant. They drove onto a small road behind the factory, turned off the vehicle's lights and followed the road for approximately one-quarter mile into the woods. There, defendant, Jennings Locklear and Ronald Oxendine discussed the theft and left Jacobs alone in the van at approximately 11:00 p.m. She then saw the three walk through a field towards the plant. Defendant " . . . had what looked like wire cutters with him and they had gloves." Jacobs waited in the van until 3:00 a.m. and then drove to the place where the van was originally parked because I thought that they would be there at that time." However, no one was there, and Jacobs returned to her home in Pembroke.

At 9:00 a.m., Jacobs received a phone call from defendant, who instructed her to pick him up at a small grocery store near the Libby Owens Ford Glass Plant. When Jacobs arrived, she saw defendant, Jennings Locklear and Ronald Oxendine standing outside the store. They got into the van and "said that they were tired." Defendant took Jennings Locklear and Oxendine home and then went with Jacobs to his house.

On 13 September 1974, the Friday of the following week, defendant and Ronald Oxendine met at defendant's house and discussed going back to the factory to " . . . pick up the copper, but Larry Locklear said it was Friday the 13th and it was bad luck and he did not want to go back." On the night of 8 October, Jacobs, and defendant drove defendant's father's pickup truck down a dirt road in a wooded area. They had gone approximately one-quarter mile when Jacobs "thought I saw a flashlight shine in the woods." Defendant then drove away. The next night, defendant and Jacobs again drove down the same dirt road and stopped at the point where Jacobs had seen the light on the previous night. At that point, Jacobs saw "a pile of copper in a wire form. . . . " Defendant told her that "it was copper from the Glass Plant."

The wire was smoldering, and defendant got out of the truck and began beating the copper with a stick. However, defendant heard a noise, laid down the stick, got back in the truck and began to back down the road. At that moment officers from the Robeson County Sheriff's Department came out of the woods and arrested both Jacobs and defendant.

Ray Priest, a detective with the Robeson County Sheriff's Department, testified that on 9 October 1974, he was searching for marijuana and drove down an old farm road into the woods in a rural section of Robeson County. He saw smoke in the woods and investigated, whereupon he discovered some conduit pipe and a large pile of smoldering copper wire. He heard another vehicle approaching and hid. Soon thereafter, defendant drove his van to the spot, got out to inspect the wire and left. Approximately one hour later, defendant returned to the scene in a pickup truck and was accompanied by Marcine Jacobs and a child. Defendant got out of the truck, beat the smoldering wire with a stick and had started to leave when the officers arrested him and Jacobs.

The following morning, Priest went to the Libby Owens Ford Plant and inquired as to whether any wire was missing. A search of the supply area revealed empty wire reels. A ladder belonging to the plant was discovered in the woods outside the security fence.

William R. Ikner, a security supervisor for the Libby Owens Ford Glass Company, testified that he searched the supply yard of the plant on 10 October 1974 and discovered numerous

spools from which wire had been recently taken. He also found the stock number of the conduit pipe found by the officers to be the same as the number of conduit pipe in the stockyard. Ikner estimated the value of the pipe found by the officers to be $134 and the value of the copper wire to be $7,500.

Defendant's evidence consisted of the testimony of Ronald Oxendine and Fay Dial. Oxendine admitted to stealing the wire on 6 October 1974 with Jennings Locklear and Marcine Jacobs. He further stated that defendant did not take part in the theft and had no knowledge of it. Dial testified that she had been with defendant on 6 October from 4:30 p.m. through 8:30 a.m. the following morning.

Other relevant facts are set out in the opinion below.

*Attorney General Edmisten, by Assistant Attorney General Daniel C. Oakley, for the State.*

*Arthur L. Lane, by Paul B. Eaglin, for defendant appellant.*

MORRIS, Judge.

**[1]** In his initial argument on appeal, defendant contends that the trial judge erred in instructing the jury concerning the doctrine of possession of recently stolen goods.

> "It is the general rule in this State that one found in the unexplained possession of recently stolen property is presumed to be the thief. This is a factual presumption and is strong or weak depending on circumstances—the time between the theft and the possession, the type of property involved, and its legitimate availability in the community." *State v. Raynes,* 272 N.C. 488, 491, 158 S.E. 2d 351, 353-54 (1968).

In order for the doctrine to apply, there must be evidence of three things: "(1) That the property described in the indictment was stolen, the mere fact of finding one man's property in another man's possession raising no presumption that the latter stole it; (2) that the property shown to have been possessed by accused was the stolen property; and (3) that the possession was recently after the larceny, since mere possession of stolen property raises no presumption of guilt. (Citations

State v. Locklear

omitted.)" *State v. Foster*, 268 N.C. 480, 485, 151 S.E. 2d 62, 66 (1966).

Defendant maintains that the presumption did not properly apply for two reasons. He first argues that the State " . . . never identified the property in the sense of showing that the mass of wiring was the fruit of criminal conduct." This argument is without merit. State's evidence clearly showed that several spools of copper wire and some conduit pipe owned by the Libby Owens Ford Glass plant were missing from the stockyard; that the conduit pipe found at the scene of defendant's arrest was positively identified as belonging to Libby Owens Ford; that although the recovered copper wire was not marked to allow positive identification, it was the same as that used by Libby Owens Ford as "control cable wire"; and that the copper wire was found at the scene of defendant's arrest along with the conduit pipe. We believe that this evidence was sufficient to show, *prima facie,* that copper wire had been stolen from the Libby Owens Ford supply yard and that the wire found in the woods was that wire.

Defendant also contends that the instruction with regard to possession of recently stolen goods should not have been given because the evidence was insufficient to show that the wire and pipe discovered at the scene of his arrest was in his possession. "The possession sufficient to give rise to such inference does not require that the defendant have the article in his hand, or his person or under his touch. It is sufficient that he be in such physical proximity to it that he has the power to control it to the exclusion of others and that he has the intent to control it." *State v. Eppley,* 282 N.C. 249, 254, 192 S.E. 2d 441, 445 (1972).

The State introduced evidence that the wire and pipe were located in a rural, wooded area; that defendant was observed by law enforcement officers in close proximity of the wire on two occasions; that defendant told his companion, Marcine Jacobs, that the material was copper from the Glass Plant; that the wire's insulation was burning; that defendant, upon returning to the area, beat the burning wire with a stick in an apparent attempt to put out the fire; and that defendant stopped beating the wire and attempted to flee the area when he heard a noise in the woods. Obviously, the evidence indicated that defendant was in close physical proximity to the wire on more than one occasion. His actions with respect to putting out the fire

showed that he had the intent to exert control over the stolen property. In view of the clandestine and secluded area in which the wire was deposited as well as defendant's repeated visits to it, we believe defendant's actions were sufficient to show his power to control the material to the exclusion of others. Accordingly, we hold that the State's evidence established defendant's possession of the wire and pipe, and that the trial court did not err in instructing the jury as to the doctrine of possession of recently stolen goods.

Defendant's next argument relates to the following portion of the judge's charge:

"Now, ladies and gentlemen, for a person to be guilty of a crime it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit the crime of larceny, felonious larceny, each of them is held responsible for the acts of the others done in the commission of that crime. So, I charge that if you should find from the evidence, beyond a reasonable doubt, that on or about the sixth day of September, 1974, the defendant, Larry Locklear, acting either by himself or acting together with Ronald Dean Oxendine or Jennings Locklear or either one or both of them, took and carried away copper wire belonging to Libby Owens Ford, Inc., without the consent of Libby Owens Ford, Inc., knowing that he, Larry Locklear, was not entitled to take it, and intending at the time to deprive Libby Owens Ford, Inc., of the use of the property permanently and that the property was worth more than two hundred dollars then it would be your duty to return a verdict of guilty of felonious larceny as charged in the bill of indictment."

[2] Initially, defendant contends that this portion of the charge constitutes prejudicial error because the State never established the *corpus delicti* of the crime of larceny, either on 6 September 1974, or at any other time. As defendant correctly notes in his brief, a larceny conviction may not stand unless there is (1) proof that a crime has been committed, i.e., proof of the *corpus delicti*, and (2) proof that defendant committed the crime. *State v. Clyburn*, 273 N.C. 284, 159 S.E. 2d 868 (1968). However, we do not agree with defendant that the State failed to establish the *corpus delicti*. There can be no question that the

State v. Locklear

State introduced evidence showing that a larceny had taken place. As for the date the larceny took place, Marcine Jacobs, who was defendant's girl friend, testified that she accompanied defendant and two others to the Libby Owens Ford plant on 6 September 1974. This was sufficient to raise the inference that the crime took place on 6 September and thereby *prima facie* established the *corpus delicti* as of that date. This contention is without merit.

[3] Defendant also argues that this portion of the charge amounts to a fatal variance between the crime alleged in the indictment (larceny on 8 October 1974) and shown by the State's evidence (larceny on 6 September 1974). It is true that the State's evidence tended to indicate that the theft took place on 6 September. On the other hand, defendant's evidence tended to show that the crime took place on 6 October and that defendant had an alibi on that evening. Where the evidence is conflicting, the trial judge has a duty to apply the law to the various factual situations presented. G.S. 1-180; *Faison v. Trucking Co.,* 266 N.C. 383, 146 S.E. 2d 450 (1966). Since the State's evidence supported the finding that the crime took place on 6 September, the trial judge properly instructed the jury to that effect. A review of the entire charge further reveals that the trial judge also summarized defendant's evidence and contentions with regard to when the theft took place and his alibi at that time. Thus, the trial judge explained the conflict in the evidence to the jury and instructed them that in order to find defendant guilty, they would have to find that the crime took place on 6 September, as the State contended. We believe, and so hold, that the charge, viewed as a whole, was proper upon the evidence presented at trial.

Defendant's assignment of error, if error there be, is properly addressed not to the judge's instructions but instead to the denial of defendant's motion for nonsuit.

[4] It is well established that the evidence in a criminal case must correspond with the allegations of the indictment which are essential and material to charge the offense. *State v. McDowell,* 1 N.C. App. 361, 161 S.E. 2d 769 (1968). Whether there is a fatal variance between the indictment and the proof is properly raised by a motion for judgment as of nonsuit. *State v. Cooper,* 275 N.C. 283, 167 S.E. 2d 266 (1969). Where time is not of the essence of the offense charged and the statute of limi-

tations is not involved, a discrepancy between the date alleged in the indictment and the date shown by the State's evidence is ordinarily not fatal. G.S. 15-155; *State v. Lemmond,* 12 N.C. App. 128, 182 S.E. 2d 636 (1971). "But this salutory rule, preventing a defendant who does not rely on time as a defense from using a discrepancy between the time named in the bill and the time shown by the evidence for the State, cannot be used to ensnare a defendant and thereby deprive him of an opportunity to adequately present his defense." *State v. Whittemore,* 255 N.C. 583, 592, 122 S.E. 2d 396, 403 (1961).

In the present case, defendant presented an alibi defense. His alibi, however, related to 6 October 1974, not to 8 October 1974 as charged in the indictment or 6 September 1974 as shown by the State's evidence. Therefore, it is apparent that defendant did not rely on the date charged in the indictment, nor did the variation in the State's evidence deprive defendant of his right adequately to present his defense. Under these circumstances, we believe, and so hold, that the variance between the date in the indictment and that shown by the State's evidence is not prejudicial. *See State v. Wilson,* 264 N.C. 373, 141 S.E. 2d 801 (1965).

We have reviewed defendant's remaining assignment of error and find it to be without merit.

Defendant received a fair trial free from prejudicial error.

No error.

Judges PARKER and CLARK concur.