STATE OF NORTH CAROLINA v. W.M. BAILEY

No. 807SC441

(Filed 4 November 1980)

1. **Assault and Battery § 14.3; Indictment and Warrant § 17.2– felonious assault – variance in dates between indictment and evidence not fatal**

   There was no fatal variance between an indictment charging that the date of a felonious assault was 17 April 1979 and evidence that the assault occurred on 17 February 1979 where the variance was caused by a clerical mistake in the indictment; the statute of limitations was not involved; all of the evidence at trial concerned an incident on 17 February; defense counsel's questioning of the witnesses clearly indicated that he was aware of the clerical error before trial; and defendant was not prejudiced in his preparation of an adequate defense by the variance.

2. **Criminal Law §§ 33.2, 34.7– felonious assault – prior misconduct toward victim – intent to kill – codefendant's confrontations with victim – motive**

   In a prosecution for assault with a deadly weapon with intent to kill on 17 February 1979, testimony that defendant participated in a beating of the victim in December and went to the victim's home in January with a shotgun was relevant to prove his intent to kill the victim on 17 February. Furthermore, evidence of separate confrontations with the victim by a codefendant, the son of defendant, was competent to show the general ill will existing between defendant's family and the victim and defendant's motive for the assault.

3. **Criminal Law § 102.5– improper question by prosecutor – objection sustained – failure to instruct jury to disregard**

   Defendant was not prejudiced when the prosecutor asked defendant on cross-examination, "You figure you can buy your way out of anything, don't you?" and the court sustained an objection to the question without instructing the jury on its own motion to disregard it, since the question did not have the degree of inflammatory impact sufficient to have seriously affected the outcome of the trial and the impropriety of the prosecutor's action in asking it was not gross.

4. **Criminal Law § 102.9– jury argument – characterization of defendants as "lawless people"**

   In this prosecution for assault with a deadly weapon inflicting serious injury, the prosecutor's remarks in his jury argument that the defendants were "lawless people" who have "no regard for the law books or the laws that have been established" amounted to little more than an uncomplimentary characterization which was supported by the State's evidence, and the court's action in overruling defendant's objection to such argument did not constitute prejudicial error.

APPEAL by defendant from *Reid, Judge.* Judgment entered 20 December 1979 in Superior Court, NASH County. Heard in the Court of Appeals 6 October 1980.

This case was joined for trial with the case of *State v. Johnny Ray Bailey.* Both defendants were charged with an assault upon Glenwood Harris Perry. At the close of its evidence, the State took a voluntary dismissal in the case of J.R. Bailey. Defendant W.M. Bailey was convicted of assault with a deadly weapon inflicting serious bodily injury upon Perry in violation of G.S. 14-32(b). A four year sentence was suspended upon the conditions that defendant pay restitution to the victim for medical expenses and time lost at work, spend four weekends in the county jail, and not possess a firearm during the suspension.

The evidence discloses that, on 17 February 1979, Glenwood Harris Perry was shot in the lower leg with a .12 gauge shotgun, and that both defendant and his son, J.R. Bailey, were involved in the shooting. Eugene Perry testified that he saw defendant shoot his brother, Glenwood Perry. Defendant does not argue that the evidence was insufficient, as a matter of law, to convict him of a violation of G.S. 14-32(b). The facts, therefore, shall be set out only as necessary for an understanding of the issues raised on appeal.

*Attorney General Edmisten, by Associate Attorney Robert L. Hillman, for the State.*

*Valentine, Adams and Lamar, by I.T. Valentine, Jr., for defendant appellant.*

VAUGHN, Judge.

Defendant brings several assignments of error which evolve into four basic issues. We shall consider these issues in the same order in which they developed at trial.

[1] The first question concerns a variance between the date of the offense charged in the bill of indictment, 17 April 1979, and the date of the events proven at trial, 17 February 1979. J.R. Bailey was arrested for the shooting on 18 February 1979. The indictment charged him with shooting Perry on 17 February 1979. Defendant is the father of J.R. Bailey. On 22 May 1979, defendant was arrested pursuant to a warrant which charged

him with shooting Perry on 17 April 1979. The indictment charged defendant for an incident on 17 April 1979. Only Deputy Sheriff Reams was able to give an explanation for the variance. He testified that the warrant incorrectly referred to the date of 17 April due to a clerical mistake by the magistrate.

The trial court properly denied defendant's motion for a directed verdict at the close of the State's evidence because of the variance in the dates. A variance between allegations in the indictment and the evidence in a criminal trial is ordinarily not fatal where the statute of limitations is not involved. *State v. Davis*, 282 N.C. 107, 191 S.E. 2d 664 (1972); *State v. Locklear*, 33 N.C. App. 647, 236 S.E. 2d 376, *review denied*, 293 N.C. 363, 237 S.E. 2d 851 (1977). In addition, G.S. 15-155 provides that no judgment upon any indictment shall be reversed "for stating the time imperfectly." The trial court found that the variance was caused by a clerical error in the indictment and concluded that the statute of limitations was not involved. Nevertheless, defendant now contends that he was unfairly surprised and unable to prepare for trial. He also argues that he was erroneously charged in the disjunctive or alternative because the State, by charging J.R. Bailey with shooting Perry on 17 February 1979, was saying that he, W.M. Bailey, did not shoot Perry on that date, especially since he was charged with shooting Perry on 17 April 1979. We are not persuaded by this reasoning.

In *State v. Swaney*, the Court held that "[t]he indictment should not charge a party disjunctively or alternatively, *in such a manner as to leave it uncertain what is relied on as the accusation against him.*" 277 N.C. 602, 612, 178 S.E. 2d 399, 405, *appeal dismissed*, 402 U.S. 1006, 91 S. Ct. 2199 (1971) (emphasis added). We fail to see how defendant could have been uncertain or surprised as to the circumstances relied on by the State to charge him. In his own testimony, defendant admitted he was present during the 17 February shootings. All of the evidence offered by the State and the defense concerned a shooting on 17 February. Deputy Sheriff Reams testified that during his investigation of the matter, he had never been told by any of the parties involved about an incident in April. Perry only testified about being shot on 17 February. Defense counsel asked several State witnesses whether they knew why defendant had been charged in the warrant and indictment for a shooting on 17

April 1979. Each responded that he only knew about a shooting on 17 February. Defense counsel's repeated questioning in this regard clearly indicates that he was aware of the clerical error before trial. We hold that the variance was not fatal in this case, and defendant was not prejudiced in his preparation of an adequate defense. *State v. Locklear,* 33 N.C. App. 647, 236 S.E. 2d 376, *review denied,* 293 N.C. 363, 237 S.E. 2d 851 (1977); *State v. Lemmond,* 12 N.C. App. 128, 182 S.E. 2d 636 (1971).

[2] The second question is whether it was proper for the State to introduce evidence of prior altercations between the defendants and Perry. Defense counsel repeatedly objected to the admission of such evidence. Nevertheless, Perry was permitted to testify that J.R. Bailey came to his house and threatened to kill him for going with his sister in November 1978. He also said that the codefendant was following him on the evening of 15 December 1978. They both got out of their vehicles at a crossroads where Perry told him "you got to cut this mess out. I am not bothering you, your family, your sister, nobody . . . . I don't want you following me." According to Perry, the codefendant cursed him and began beating on him with his fists. Perry further stated:

> We were still fighting when W.M. Bailey came up . . . . When W.M. Bailey came up on this occasion, I said, "Peter, you have got to get Johnny Ray to cut this stuff out, just quit this stuff." Peter did not say anything but walked up to me with a pocket knife in his hand, and hit me where it busted the skin. It almost knocked me out and I had to have stitches. I knew they were beating me, but I could not feel it. Johnny was holding me and W.M. Bailey was doing the kicking.

Perry also testified that J.R. Bailey called him at home on 1 January 1979 and said "he was going to mess me up." Perry said that on the same day, Larry Bailey came to his house, and the following occurred:

> While Larry was talking, I was looking out at the truck and saw W.M. Bailey get out of the truck door on the passenger side with a gun. I saw him walk around to the back of the truck and could see by the taillights that he had a gun.

W.M. Bailey is the same man as the Defendant and is also known as Peter Bailey. I cannot tell you what kind of gun he had in his hand. It could have been a rifle or a shotgun, because it had a long barrel. Larry Bailey told Peter Bailey, "Peter, get ... back in that truck." Peter did not get back into the truck, so Larry went around the truck and put him back into the truck.

Three other witnesses, Perry's wife and brother and the sheriff, gave testimony tending to corroborate Perry's testimony about encounters with defendants.

Defendant argues that testimony about those events constituted evidence of collateral matters intended to discredit and impeach him. Defendant relies solely on *State v. Godwin,* 224 N.C. 846, 32 S.E. 2d 609 (1945), in which the defendant was tried for assault with a deadly weapon with intent to kill, and a witness was permitted to testify about defendant's use of "vile and profane language" on unrelated occasions. *Godwin* can be distinguished from the instant case because the testimony about prior incidents between defendant and Perry was admissible "within the rule that proof of the commission of other like offenses may be admitted to show the *scienter,* intent and motive when the crimes are so connected or associated that the evidence will throw light on the question under consideration." 224 N.C. at 848, 32 S.E. 2d at 610. *See* 1 Stansbury, N.C. Evidence § 92 (Brandis rev. 1973).

Defendant was charged with a violation of G.S. 14-32(a). The State attempted to prove the essential element of intent to kill. The testimony that defendant participated in the beating of Perry in December and went to his home in January with a shotgun was relevant to prove his intent to kill Perry on 17 February 1979. In *State v. Benthall,* a prosecution for assault with a deadly weapon, the prosecutrix was permitted to testify that defendant had shot her on four previous occasions. This Court upheld the admission of the testimony because "[i]t was relevant to show that defendant shot the prosecutrix intentionally rather than accidentally." 20 N.C. App. 167, 168, 201 S.E. 2d 34, 35 (1973). Defendant, however, additionally contends that the trial court erred in failing to instruct the jury, even absent a special request, that evidence of J.R. Bailey's separate confrontations with Perry should not be considered as against

him. We do not agree. The codefendant's encounters with the prosecuting witness tended to show the general ill will existing between their families and defendant's motive for the assault. J.R. Bailey was angry with Perry, a married man, for going with his younger sister. Apparently, defendant, the father of the girl, was also angry with Perry, and he testified that it made him mad. The motive for a crime may be shown even though it is not a necessary element of the offense charged. *State v. Ruof*, 296 N.C. 623, 252 S.E. 2d 720 (1979); *State v. Adams*, 245 N.C. 344, 95 S.E. 2d 902 (1957). We, therefore, overrule all of defendant's exceptions to the evidence of prior altercations.

**[3]** The third issue is whether the solicitor's cross-examination of defendant was so prejudicial as to require a new trial. The pertinent portions are:

Q. And you say you were convicted of three speeding tickets and bootlegging and you have paid a fine in every case?

A. Yes, sir. I have never fought none of them in court.

Q. Do what?

A. I have never fought one of them in court.

Q. Because you always paid your way out of it, didn't you?

MR. VALENTINE: Objection to the reference, "paid his way out of it."

A. I just didn't figure it was worth going to court against.

MR. VALENTINE: I think that it is an unseemly thing for the District Attorney to . . .

OVERRULED

Q. You figure you can buy your way out of anything, don't you, Mr. Bailey?

OBJECTION

SUSTAINED

MR. VALENTINE: I believe I want to be heard out of the presence of the Jury on that.

It was, of course, proper to cross-examine defendant about his prior criminal convictions. 1 Stansbury, N.C. Evidence § 112 (Brandis rev. 1973). The dispute centers on the question to defendant "You figure you can buy your way out of anything, don't you, Mr. Bailey?" Defendant argues that even though his objection to this question was sustained, he was prejudiced by the very nature of the question itself and the failure of the judge to instruct the jury to disregard it.

A cardinal rule of appellate review is that the scope of cross-examination is firmly lodged in the trial judge's discretion, and his rulings thereon will not be disturbed unless the verdict was improperly influenced. *State v. Parker,* 45 N.C. App. 276, 262 S.E. 2d 686 (1980). We disapprove of the solicitor's question and hold that the trial judge correctly sustained defendant's objection thereto. The question did not, however, have the degree of inflammatory impact sufficient to have seriously affected the outcome at trial. *See State v. Locklear,* 294 N.C. 210, 241 S.E. 2d 65 (1978) [solicitor asked defense witness "you are lying through your teeth and you know you are playing with a perjury count; don't you?"]; and *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283 (1975). In addition, since the impropriety was not gross, the judge did not abuse his discretion in failing to caution the jury to disregard it on his own motion.

> The conduct of a trial and the prevention of unfair tactics by all connected with the trial must be left in a large measure to the discretion of the trial judge, and it is the duty of the trial judge to intervene when remarks of counsel are not warranted by the evidence and are calculated to prejudice or mislead the jury.

*State v. Holmes,* 296 N.C. 47, 50, 249 S.E. 2d 380, 382 (1978). Defendant was at liberty to request a cautionary instruction after his objection was sustained, and having failed to do so, he has not shown any prejudicial error in the cross-examination.

[4] The final issue is whether the court erred in overruling defendant's objection to the solicitor's argument that "the defendants were lawless people, had no regard for the law books or the laws that have been established; and that in the course of his argument he picked up a law book and slammed it down on the desk." Only this portion of the argument appears in the record for our review. The latitude permitted in jury argument

is controlled by the judge's discretion. *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975). Ordinarily, his discretion is not reviewable "unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations." *State v. Taylor*, 289 N.C. 223, 227, 221 S.E. 2d 359, 362 (1976). A new trial is awarded only in cases of extreme abuse in the argument. *State v. Davis*, 45 N.C. App. 113, 262 S.E. 2d 329 (1980) [reference to defendant as a "mean S.O.B."]; *State v. Swink*, 29 N.C. App. 745, 225 S.E. 2d 646 (1976) [reference to defendant as a "professional criminal"]. The reference to "lawless people" here, however, amounts to little more than an uncomplimentary characterization which was amply supported by the State's evidence that defendant shot Perry, inflicting serious bodily injury, on 17 February 1979. *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), *death sentence vacated*, 408 U.S. 939, 92 S. Ct. 2873 (1972); *State v. Wortham*, 287 N.C. 541, 215 S.E. 2d 131 (1975). We, therefore, decline to grant a new trial on this ground. *State v. Noell*, 284 N.C. 670, 202 S.E. 2d 750 (1974), *death sentence vacated*, 428 U.S. 902, 96 S. Ct. 3203 (1976); *State v. Mink*, 23 N.C. App. 203, 208 S.E. 2d 522, *cert. denied*, 286 N.C. 340, 211 S.E. 2d 215 (1974).

We have carefully reviewed all of defendant's assignments of error and find

No error.

Chief Judge MORRIS and Judge WELLS concur.