STATE OF NORTH CAROLINA v. DALTON WOODROW WORTHINGTON AND
JOHNNY LEE WARREN

No. 863SC344

(Filed 3 February 1987)

**1. Criminal Law § 169.3 — evidence of entrapment — excluded — admitted else-where — no error**

The trial court did not err in a prosecution for multiple drug-related of-fenses where the court refused to permit defendant Warren to present evidence of entrapment by testifying on direct examination about the substance of conversations with the State's informant. There was no prejudice because the excluded evidence was otherwise placed before the jury. N.C.G.S. 15A-1443(a).

**2. Narcotics § 4.2 — entrapment — question for jury**

Defendant Warren's motion to dismiss multiple drug-related charges based on entrapment was properly denied where an SBI agent initiated con-tact with defendant through an informant only after receiving information from the informant that defendant dealt in cocaine; defendant readily par-ticipated in the transactions after being contacted by the agent, suggesting a meeting place and requesting a cut of the cocaine from the first transaction; defendant and the agent discussed larger transactions and all further contacts between them were conducted without the informant's participation; and the only hesitancy defendant expressed involved his concern that the SBI agent might be a law enforcement officer. Although defendant testified to the con-trary, the evidence presented a question of fact for the jury.

**3. Indictment and Warrant § 9.3; Narcotics § 2 — conspiracy to sell and deliver co-caine — indictment — surplusage**

An indictment charging conspiracy to sell and deliver cocaine charged the offense with sufficient clarity to confer subject matter jurisdiction where the indictment alleged that defendant "unlawfully, willfully, and feloniously did . . . conspire . . . to unlawfully, willfully and feloniously <u>did</u> sell and deliver . . . a controlled substance . . . ." The underscored "did" was obvious surplusage and irrelevant to an otherwise properly alleged charge.

**4. Criminal Law § 126 — disjunctive verdict — no error**

A verdict of guilty of conspiracy to sell and deliver cocaine was not defec-tive where the verdict sheet referred to the charge of conspiracy with "Dalton Woodrow Worthington, Sr. and/or Patricia Ann Newby." The trial court carefully instructed the jury that each of their verdicts must be unanimous, and the unanimity requirement was repeated upon the court's later inquiry of the jurors as to their progress in deliberations.

**5. Narcotics § 4 — cocaine — evidence of weight — sufficient**

The evidence in a prosecution for cocaine trafficking was sufficient to take to the jury the question of whether the white powder in question weighed 28

State v. Worthington

grams or more as required by N.C.G.S. 90-95(h)(3) where an SBI chemist testified that the substance weighed 28.15 grams before laboratory analysis and that a small amount had been consumed during analysis, and two weights taken during the trial both registered less than 28 grams.

**6. Narcotics § 4— cocaine—evidence of weight—separate bags combined**

The evidence presented a question for the jury as to whether defendant Warren possessed a mixture of cocaine weighing 28 grams or more where an SBI chemist testified that the white powder was contained in three separate bags when he received it; that he removed the powder from the separate bags and combined it into one bag; and that the one bag contained 70 grams of a cocaine mixture.

**7. Criminal Law § 102.6— prosecutor's argument—codefendant labeled drug king —no prejudice**

There was no prejudice in a prosecution for multiple drug-related offenses from the prosecutor's characterization of a codefendant as a "dope king" where the characterization was made only once and in light of the evidence with respect to the quantities of cocaine, money and other drug paraphernalia found during the search of the codefendant's residence.

**8. Narcotics § 4— conspiracy to traffic—evidence sufficient**

There was sufficient evidence to submit to the jury the issue of defendants' guilt of conspiracy to traffic in more than 200 grams of cocaine where defendant Warren repeatedly referred to "his man," the manner in which "his man" would like to arrange a drug deal, and "his man's" ability to transact a half-pound cocaine deal; one-hundred dollar bills from the money the SBI agent used to purchase the cocaine were found in the possession of each of the defendants; defendant Warren's name and telephone number were recorded in a notebook discovered in defendant Worthington's residence; and the notebook appeared to contain a record of payments and balances for dated transactions.

**9. Conspiracy § 3— conspiracy to possess and conspiracy to sell and deliver—one agreement, one conspiracy**

Judgments for conspiracy to possess cocaine were arrested where defendants were also convicted of conspiracy to sell and deliver cocaine, which necessarily encompassed possession. Defendants could only be convicted of one conspiracy because there was only one agreement which encompassed both the possession and the sale of cocaine; it is the number of separate agreements rather than the number of substantive offenses which determines the number of conspiracies.

**10. Criminal Law § 102.6— trafficking in cocaine—prosecutor's argument—improper—no prejudice**

In a prosecution for multiple drug-related offenses, the prosecutor's argument that defendants could have escaped the mandatory sentencing provisions for trafficking in cocaine by substantially assisting the State in the prosecution of others was improper because it was without evidentiary basis and because it amounted to an impermissible comment on defendants' exercise of their rights to remain silent; however, the error was harmless due to the overwhelming evidence of defendants' guilt. N.C.G.S. 90-95(h)(5).

APPEAL by defendants from *Hight, Judge.* Judgments entered 16 January 1985 in Superior Court, PITT County. Heard in the Court of Appeals 10 November 1986.

A Pitt County Grand Jury returned true bills of indictment charging defendant Johnny Lee Warren with multiple drug related offenses arising out of his alleged sales of cocaine to an undercover law enforcement officer on 6 September 1984 and on 10 September 1984. A true bill of indictment was also returned charging defendant Dalton Woodrow Worthington with three related offenses involving cocaine which were alleged to have occurred on 10 September 1984. The State's motion for joinder of offenses and defendants was allowed.

The State's evidence tended to show that SBI Agent Ray E. Jackson was working in an undercover capacity in Pitt County in September 1984. Acting in response to information obtained from an informant, Samuel Vines, and with Vines' assistance, Agent Jackson arranged a meeting with defendant Warren on the afternoon of 6 September 1984 for the purpose of purchasing an ounce of cocaine. Warren arrived at the prearranged time and place accompanied by Vines. Warren told Agent Jackson that he had no cocaine left and would need some money "up front" to get the cocaine. After some discussion, Agent Jackson gave Warren $2,200 and another meeting was arranged for delivery of the cocaine.

After Warren left to obtain the cocaine, he was followed by officers who observed him go to a residence which was later determined to be that of defendant Worthington. Warren went into the residence, remained approximately fifteen minutes, and then left, proceeding to the place where he had arranged to meet Agent Jackson. Warren gave Agent Jackson a plastic bag containing white powder, later analyzed as 28.15 grams of 47% cocaine. Warren and Agent Jackson had discussions concerning Jackson's purchase of a half-pound of cocaine and agreed that Agent Jackson would call Warren on the following Sunday, 9 September.

On 9 September Agent Jackson telephoned Warren and they discussed an additional purchase of cocaine on the following day. On 10 September, Jackson contacted Warren and Warren stated that he would be "ready to do the deal" for a half pound of cocaine in about an hour. Warren agreed to meet Agent Jackson in Jackson's motel room. At approximately 1:00 p.m., Warren and

his girlfriend, Patricia Ann Newby, went to the motel. While the girlfriend waited in the car, Warren went inside Jackson's room and asked him for $13,000, the agreed price for the cocaine. Warren proposed to deliver the cocaine to Jackson at another place. Jackson refused to conduct the transaction in that manner and, after substantial discussion, Jackson agreed to give Warren $5,000 to take to his source in order to get two ounces of cocaine as the first part of the half-pound. The $5,000 consisted of $100 bills which previously had been photocopied in order to record the serial numbers.

When Warren left the motel with his girlfriend, he was again kept under surveillance by law enforcement officers. He drove to Worthington's residence and went inside. After approximately 35 minutes, Warren left the Worthington residence and drove back to Agent Jackson's motel room, where he gave Jackson three plastic bags containing white powder. The white powder was later analyzed as weighing a total of 70 grams and containing 34% cocaine. Warren then asked for the balance of the $13,000 so that he could complete the half-pound deal. At that point, Warren was placed under arrest. He was searched and one of the $100 bills given to him earlier by Agent Jackson was found in his possession.

Shortly after Warren's arrest, officers went to Worthington's residence and, pursuant to a search warrant, searched the premises and Worthington's automobile. The officers found and seized plastic bags of cocaine weighing, respectively, 31 grams, 767 grams, and 14 grams; $4,900 of the same currency Jackson had given Warren, $28,450 in other currency, and a wide variety of other drug paraphernalia and equipment.

Defendant Worthington neither testified nor offered evidence. Defendant Warren testified that he had been shot in March 1984 and was disabled as a result of the shooting. He was in need of money when Samuel Vines contacted him about finding cocaine for Agent Jackson, and he agreed to help Vines, who was his cousin, because he owed Vines money. He denied any previous involvement with cocaine, denied any knowledge of or agreement with defendant Worthington, and testified that the person from whom he had purchased the cocaine was younger than Worthing-

ton. He also testified that Agent Jackson had offered him $1,000 to arrange the half-pound purchase.

The jury found both defendants guilty of all charges as follows:

Defendant Worthington

84CRS16844—Count 1—Guilty of possession of in excess of 400 grams of cocaine. (10 September 1984.)

Count 2—Guilty of conspiracy to possess 200 grams or more, but less than 400 grams of cocaine. (10 September 1984.)

Count 3—Guilty of conspiracy to sell and deliver 200 grams or more, but less than 400 grams of cocaine. (10 September 1984.)

Defendant Warren

84CRS17732—Count 1—Guilty of possession of 28 grams or more, but less than 200 grams of cocaine. (6 September 1984.)

Count 2—Guilty of sale and delivery of 28 grams or more, but less than 200 grams of cocaine. (6 September 1984.)

84CRS17733            Guilty of transporting 28 grams or more, but less than 200 grams of cocaine. (6 September 1984.)

84CRS17734—Count 1—Guilty of possession of 28 grams or more, but less than 200 grams of cocaine. (10 September 1984.)

Count 2—Guilty of sale and delivery of 28 grams or more, but less than 200 grams of cocaine. (10 September 1984.)

Count 3—Guilty of conspiring to possess 200 grams or more, but less than 400 grams of cocaine. (10 September 1984.)

Count 4—Guilty of conspiring to sell and deliver 200 grams or more, but less than 400 grams of cocaine. (10 September 1984.)

84CRS16843                    Guilty of transporting 28 grams or more, but less than 200 grams of cocaine. (10 September 1984.)

Both defendants were sentenced to the applicable mandatory minimum sentence provided by G.S. 90-95(h)(3) for each offense and fined. The sentences were ordered to run concurrently. Both defendants appeal.

     *Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Joan H. Byers, for the State.*

     *Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender David W. Dorey, for defendant appellant Worthington.*

     *Public Defender Robert L. Shoffner, Jr., for defendant appellant Warren.*

     MARTIN, Judge.

     By separate assignments of error, defendant Warren contends that one of the indictments was fatally defective, that the trial court erred in certain of its evidentiary rulings, and that certain of the charges against him should have been dismissed because the State's evidence was insufficient to establish his guilt. He also contends that the defense of entrapment was established as a matter of law, requiring dismissal of all charges against him. Both defendants challenge the sufficiency of the evidence to sustain their convictions for conspiracy. They also contend that remarks by the District Attorney during his closing argument to the jury entitle them to a new trial. We have carefully considered each of their joint and several contentions and conclude that, although certain errors occurred at the trial, the errors were not prejudicial to the defendants' rights to a fair trial and do not require that a new trial be awarded. However, because the trial court permitted each defendant to be convicted of two separate conspiracies upon evidence of only one scheme or agreement, we arrest judgment as to each defendant's conviction for conspiracy to possess 200 grams or more, but less than 400 grams, of cocaine.

I

DEFENDANT WARREN'S ASSIGNMENTS OF ERROR

A.

[1] Defendant Warren contends that he was prevented from presenting his full defense of entrapment because the trial court refused to permit him to testify, on direct examination, concerning the substance of certain conversations between himself and Samuel Vines, the State's informant. Through his testimony as to the content of these conversations, defendant sought to establish that Vines induced him to find the cocaine by offering to forgive repayment of a loan which Vines had made to him and by telling him that he would be paid for finding the cocaine. The State concedes that Vines' statements were not hearsay and were admissible to show that the statements were made and that by reason of the statements, defendant did the acts alleged. *See State v. Brockenborough*, 45 N.C. App. 121, 262 S.E. 2d 330 (1980). The State contends, however, that the excluded evidence was otherwise placed before the jury and therefore defendant Warren was not prejudiced by its exclusion. We agree with the State.

"Where evidence of similar import to that which was improperly excluded is admitted at other times in the trial, the exclusion will not be held to be prejudicial error." *State v. Smith*, 294 N.C. 365, 377, 241 S.E. 2d 674, 681 (1978). Although the State's objections to Warren's testimony were initially sustained, Warren was later permitted to testify: that Vines had contacted him three times before he met with Agent Jackson; that Vines knew he was disabled and in financial difficulty; that upon his initial refusal of Vines' request that he sell cocaine Vines reminded him of the $100 which Vines had loaned him; that Vines made all the arrangements for Warren's initial meeting with Agent Jackson and paid for his gas to go to that meeting; and that Vines forgave the $100 when Warren sold the first drugs to Agent Jackson. Defendant Warren has failed to show that he was prejudiced by the court's exclusion of his testimony concerning these conversations with Vines during his direct testimony. *See* G.S. 15A-1443(a).

B.

[2] Defendant Warren next contends that he was entitled to a dismissal of all the charges against him because the defense of en-

trapment was shown as a matter of law. Entrapment is the inducement of a person to commit a criminal offense not contemplated by that person, for the mere purpose of instituting a criminal action against him. *State v. Stanley*, 288 N.C. 19, 215 S.E. 2d 589 (1975).

To establish the defense of entrapment, it must be shown that (1) law enforcement officers or their agents engaged in acts of persuasion, trickery or fraud to induce the defendant to commit a crime, and (2) the criminal design originated in the minds of those officials, rather than with the defendant. *State v. Walker*, 295 N.C. 510, 246 S.E. 2d 748 (1978). The defense is not available to a defendant who was predisposed to commit the crime charged absent the inducement of law enforcement officials. *State v. Hageman*, 307 N.C. 1, 296 S.E. 2d 433 (1982). The defendant has the burden of proving entrapment to the satisfaction of the jury. *Id.*

Ordinarily, the issue of entrapment is a question of fact to be resolved by the jury. *Stanley, supra.* Only when "the undisputed evidence discloses that an accused was induced to engage in criminal conduct that he was not predisposed to commit" can we hold as a matter of law that the defendant was entrapped. *Hageman* at 30, 296 S.E. 2d at 450. Predisposition may be shown by the defendant's ready compliance, acquiescence in, or willingness to cooperate in the proposed criminal plan. *Hageman, supra.*

In the present case, the State presented ample evidence from which the jury could infer defendant Warren's predisposition to deal in cocaine. Agent Jackson initiated contact with Warren through Vines only after receiving information from Vines that Warren dealt in cocaine. Once contacted by Agent Jackson, Warren readily participated in the transactions, suggested the meeting place and requested a cut of the cocaine from the first transaction. He and the agent discussed larger transactions and all further contacts between them were conducted without Vines' participation. The only hesitancy which Warren expressed to Agent Jackson involved Warren's concern that Jackson might be a law enforcement officer. Warren's own testimony was contrary, suggesting that he was induced by Vines to participate in the crimes and that he would not have done so absent his financial condition and the persuasion practiced upon him by Vines. Thus,

the evidence presented a question of fact for the jury on the issue of entrapment and defendant's motion to dismiss was properly denied.

## C.

[3]  Defendant Warren next contends that the indictment charging him with conspiracy to sell and deliver cocaine in excess of 200 grams but less than 400 grams failed to state the charged offense with sufficient clarity to confer subject matter jurisdiction on the court. The portion of the fourth count of the indictment in case No. 84CRS17734 to which he assigns error reads as follows:

> [O]n or about the 10th day of September, 1984, . . . the defendant . . . unlawfully, willfully and feloniously did . . . conspire with Dalton Woodrow Worthington and Patricia Ann Newby . . . to unlawfully, willfully, and feloniously did sell and deliver to R. E. Jackson a controlled substance, to wit: in excess of 200 grams but less than 400 grams of cocaine . . . . (Emphasis added.)

He raises this issue for the first time on appeal.

Defendant Warren asserts that the underscored word "did" renders meaningless the allegations of conspiracy contained in the count. He argues that because a conspiracy is an agreement to do a *future* unlawful act, it cannot properly be alleged by use of the *past tense*. He contends that the improper use of the past tense invalidates the indictment. We disagree.

A bill of indictment "is sufficient if it charges the offense in a plain, intelligible and explicit manner . . . . Allegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage." *State v. Taylor*, 280 N.C. 273, 276, 185 S.E. 2d 677, 680 (1972). We find the inclusion of the underscored "did" to be obvious surplusage and irrelevant to the otherwise properly alleged charge. This assignment of error is overruled.

## D.

[4]  In connection with this same count of the bill of indictment in case number 84CRS17734, defendant Warren contends that the

verdict was defective. He bases his contention upon the wording of the verdict sheet which was submitted by the court as follows:

> As to the charge of conspiring with Dalton Woodrow Worthington, Sr. and/or Patricia Ann Newby on or about September 10, 1984, to sell and deliver to R. E. Jackson 200 grams or more, but less than 400 grams of Cocaine, we, the jury, by unanimous verdict find the defendant: . . . .

Defendant contends that the verdict is defective because there is the possibility that some jurors found a conspiracy with Worthington and others found a conspiracy with Newby.

Our Supreme Court has held that a defendant's right to a unanimous verdict was not violated where the underlying felonies upon which a felony murder conviction could be based were submitted in the disjunctive, *State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308, *cert. denied*, 464 U.S. 865, 104 S.Ct. 197, 78 L.Ed. 2d 173 (1983), or where the requisite felonious intent for a conviction of burglary was submitted in the disjunctive. *State v. Jordan*, 305 N.C. 274, 287 S.E. 2d 827 (1982). In the present case, the trial court carefully instructed the jurors that each of their verdicts must be unanimous, and the unanimity requirement was repeated upon the court's later inquiry of the jurors as to their progress in deliberations. We hold that the instructions were adequate to insure that defendant's right to a unanimous verdict was not violated.

### E.

Defendant Warren next assigns error to the denial of his motions to dismiss the substantive trafficking offenses, claiming that the State failed to present substantial evidence that the amount of cocaine involved in each transaction met the statutory requirement for guilt of a trafficking offense. We will discuss separately his contentions with respect to each transaction.

### 6 September 1984

[5] Defendant Warren first asserts that the State's evidence with respect to the 6 September 1984 offenses failed to show that the white powder in question weighed 28 grams or more as required by G.S. 90-95(h)(3). His contention is based on the testimony of the SBI chemist.

SBI Chemist Allcox testified that he conducted laboratory tests on the white powder Agent Jackson purchased from defendant Warren on 6 September 1984. He stated that, prior to conducting any tests, he weighed the powder and found it to weigh 28.15 grams. He went on to testify that a small amount of the powder was consumed during his laboratory analysis, but he could not state precisely how much had been consumed. He further testified that he used an analytic balance scale that weighs to the closest ten-thousandth of a gram and that the scale was checked and found to be accurate a month after the testing. His laboratory tests determined that the white powder was a cocaine mixture.

During trial, Agent Allcox was asked to re-weigh the white powder purchased from defendant Warren on 6 September 1984. Two weights were taken, both of which registered less than 28 grams. Defendant asserts that these conflicts in the evidence were grounds for dismissal of the charges.

In ruling on a motion to dismiss, the trial court must view the evidence in the light most favorable to the State, give the State the benefit of every reasonable inference to be drawn, and resolve all contradictions in favor of the State. *State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370 (1984). Resolving the conflicts in the evidence in favor of the State, we find that Agent Allcox's testimony that the substance weighed 28.15 grams before lab analysis was clearly sufficient to take to the jury the question of whether the white powder weighed 28 grams or more. This assignment of error is overruled.

### 10 September 1984

[6]   As to the second transaction, defendant Warren contends that the State failed to present substantial evidence that the white powder which he delivered to Agent Jackson consisted, in its original form, of a cocaine mixture weighing 28 grams or more. We disagree.

The chemist testified that the white powder upon which the 10 September trafficking charges were based was contained in three separate plastic bags when he received it from Agent Jackson on 12 September 1984. He further testified that it was removed from the separate bags and combined into one bag prior to

analysis. His laboratory analysis revealed that the bag contained 70 grams of a cocaine mixture. Defendant Warren contends that the agent's mixing of the contents of the three separate bags precludes the State from presenting sufficient evidence of requisite drug quantity. He argues that, prior to the mixing, two of the bags may have contained nothing but a cutting agent while the third bag may have contained a quantity of cocaine insufficient to support the trafficking offense charged. We are not persuaded by this argument.

In *State v. Teasly*, 82 N.C. App. 150, 346 S.E. 2d 227 (1986), a large quantity of white powder in a sealed plastic bag was found on a shelf at the defendant's residence. A smaller quantity of white powder was discovered on a glass table approximately 18 inches away from the shelf. An officer, while conducting a search pursuant to a search warrant, combined the two substances in the large plastic bag. This court held that, on the evidence presented, it was for the jury to decide whether the defendant possessed the requisite quantity of cocaine to support a conviction for cocaine trafficking.

In *State v. Horton*, 75 N.C. App. 632, 331 S.E. 2d 215, *cert. denied*, 314 N.C. 672, 335 S.E. 2d 497 (1985), the contents of six tinfoil packets were combined by a laboratory agent for analysis. Combined, they contained 6.65 grams of heroin. Notwithstanding defendant's contention that all of the heroin could have been in one packet, this court held the evidence sufficient to support a conviction for heroin trafficking of the combined quantity.

Pursuant to *Teasly* and *Horton*, we hold that it was for the jury to decide whether defendant Warren possessed a mixture of cocaine weighing 28 grams or more. This assignment of error is overruled.

## F.

[7]  In his final separate assignment of error, defendant Warren complains of the District Attorney's characterization, in his jury argument, of the codefendant, Worthington, as a "dope king." It is interesting that Worthington has not objected to the characterization nor assigned it as error on appeal. Even so, we have reviewed the prosecutor's argument to determine if it was unfairly prejudicial to defendant Warren. In light of the evidence with

respect to the quantities of cocaine, money and other drug para-phernalia found during the search of Worthington's residence, we cannot say that the characterization, although uncomplimentary to Worthington, was unsupported by the evidence or was unfairly prejudicial to defendant Warren. *See State v. Kirkley*, 308 N.C. 196, 302 S.E. 2d 144 (1983); *State v. Bailey*, 49 N.C. App. 377, 271 S.E. 2d 752 (1980). Moreover, as the characterization was made only one time, we discern no reasonable possibility that a different result would have been reached as to either defendant had the argument not been made. G.S. 15A-1443(a). This assignment of error is overruled.

## II

### DEFENDANTS' JOINT ASSIGNMENTS OF ERROR

### A.

**[8]** Both defendants challenge the sufficiency of the State's evidence to support their convictions of engaging in a criminal conspiracy to traffic in cocaine on 10 September 1984.

A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner. *State v. Bell*, 311 N.C. 131, 316 S.E. 2d 611 (1984). In a prosecution for conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice to withstand defendant's motion to dismiss. *State v. Baize*, 71 N.C. App. 521, 323 S.E. 2d 36 (1984), *disc. rev. denied*, 313 N.C. 174, 326 S.E. 2d 34 (1985). The existence of a conspiracy may be established by direct or circumstantial evidence, although it is generally "established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *State v. Abernathy*, 295 N.C. 147, 165, 244 S.E. 2d 373, 384 (1978), *quoting State v. Whiteside*, 204 N.C. 710, 169 S.E. 711 (1933).

In the present case, there was sufficient evidence to submit to the jury the issue of defendants' guilt of conspiracy to traffic in more than 200 grams of cocaine. Although the State presented no direct evidence of an express agreement between the defendants, reasonable inferences can be drawn from the evidence indicating that defendant Warren and defendant Worthington had a mutual,

implied understanding that Warren would arrange the sale of a half-pound of cocaine to Agent Jackson and that Worthington would supply that amount of cocaine. Warren repeatedly referred to "his man," the manner in which "his man" liked to arrange a drug deal, and "his man's" ability to transact a half-pound cocaine deal. One-hundred dollar bills from the money Agent Jackson used to purchase the cocaine were found in the possession of each of the defendants. Warren's name and telephone number were recorded in a notebook discovered in Worthington's residence. The notebook appeared to contain a record of payments and balances for dated transactions. Viewed in the light most favorable to the State, the evidence presented was sufficient to take the issue of conspiracy to the jury.

B.

[9] Each defendant, however, was convicted of engaging in multiple conspiracies, the existence of which was predicated on different substantive crimes. Defendant Worthington was convicted, in the second count of the bill of indictment in 84CRS16844, of conspiring to possess more than 200 grams, but less than 400 grams of cocaine, and in the third count of the same bill of indictment, of conspiring to sell a like amount of cocaine. In 84CRS17734, defendant Warren was convicted of conspiring to possess the cocaine, and in the fourth count, of conspiring to sell it.

According to the evidence presented, there was only one agreement which encompassed both the possession of the cocaine and its sale, in the amount alleged, to Agent Jackson. It is the number of separate agreements, rather than the number of substantive offenses agreed upon, which determines the number of conspiracies. *Sanderson v. Rice*, 777 F. 2d 902 (4th Cir. 1985); *cert. denied*, 106 S.Ct. 1226 (1986); *State v. Rozier*, 69 N.C. App. 38, 316 S.E. 2d 893, *cert. denied*, 312 N.C. 88, 321 S.E. 2d 907 (1984). Accordingly, each defendant may be convicted of only one conspiracy. Since the conspiracy to sell and deliver the cocaine to Agent Jackson necessarily encompassed possession of the substance, we arrest judgment as to defendant Worthington's conviction of conspiracy to possess 200 grams or more, but less than 400 grams, of cocaine, as alleged in the second count in 84CRS16844, and arrest judgment as to defendant Warren's conviction of conspiracy to

possess 200 grams or more, but less than 400 grams, of cocaine, as alleged in the third count of the bill of indictment in 84CRS 17734. The prison sentences imposed in connection with the judgments entered upon those convictions were made to run concurrently with other sentences of equal or greater length, imposed as a result of other convictions which we do not disturb, therefore defendants' prison sentences are not affected. However, the fines imposed by the judgments which we have arrested must be stricken.

### C.

Since we must arrest judgment as to each defendant's conviction of conspiracy to possess 200 grams or more, but less than 400 grams, of cocaine on 10 September 1984, we need not consider or discuss defendants' other assignments of error with respect to those convictions.

### D.

[10]   Finally, both defendants contend that they are entitled to a new trial because the court permitted the district attorney, over objection, to make an improper argument to the jury. We agree with defendants that the argument complained of was improper and their objections should have been sustained. The error, however, does not entitle them to a new trial.

During their jury arguments, counsel for both defendants referred to the mandatory sentencing provisions of G.S. 90-95(h), arguing the harshness of those provisions and inviting the jurors to acquit the defendants or convict them of lesser offenses in order to avoid the mandatory sentences. Worthington's counsel read the statute to the jurors, including G.S. 90-95(h)(5), which permits the sentencing judge to impose a lesser sentence upon finding that a defendant has provided "substantial assistance" in connection with the prosecution of others involved in the offenses. After reading the statute, Worthington's counsel argued, *inter alia*:

> Now, there was another section in there that says it can be suspended if he renders substantial assistance or testifies against a co-defendant, or does this or does that. I read that to you and you can hear that. But there is no evidence in this case of that.

In response to these arguments, the district attorney repeated the reading of G.S. 90-95(h)(5) to the jurors and continued his argument as follows:

> All either one of these men would have had to do is help the State of North Carolina locate and apprehend these people that are bringing this cocaine into the United States.

> MR. SHOFFNER: Objection. I'm going to move for a mistrial. I don't think that's proper, to go into that. These people have got a right to plead not guilty and have a jury trial despite the . . .

> THE COURT: Overruled. And the motion is denied.

> MR. VINCENT: Same motion on behalf of the defendant Worthington.

> THE COURT: Is that as to the motion for mistrial?

> MR. VINCENT: Yes, sir.

> MR. HAIGWOOD: As I was saying, these men have had every opportunity to get out from under the mandatory minimum sentence set forth in this statute by providing assistance to the State of North Carolina in apprehending people above them or below them.

The foregoing argument was improper for two reaons. First, there was no evidentiary basis for the district attorney's argument that either defendant had the information necessary to avail himself of the provisions of G.S. 90-95(h)(5) or that either of them had had an opportunity to render assistance and had declined to do so. Although counsel must be allowed wide latitude in jury argument, the control of which is largely within the discretion of the presiding judge, counsel may not go beyond the record and argue incompetent matters or matters not in evidence or reasonably inferable therefrom. *State v. Lynch*, 300 N.C. 534, 268 S.E. 2d 161 (1980).

More importantly, however, the argument, in our view, amounted to an impermissible comment upon defendants' exercise of their rights to remain silent, guaranteed by Article 1, Section 23 of the North Carolina Constitution and by the Fifth and Fourteenth Amendments to the Constitution of the United States. *See*

*Doyle v. Ohio*, 426 U.S. 610, 49 L.Ed. 2d 91, 96 S.Ct. 2240 (1976); *State v. Lane*, 301 N.C. 382, 271 S.E. 2d 273 (1980). The district attorney's argument clearly called attention to, and adversely commented upon defendants' apparent decisions not to make post-arrest statements incriminating themselves in order to take advantage of the leniency provisions of G.S. 90-95(h)(5). We hold that defendants' constitutional rights to be free from compelled self-incrimination include the right to choose, without risk of being penalized before a jury, between the exercise of those rights and the potential benefits which may later inure through a waiver of the rights and the rendition of assistance as provided in the statute.

Not every violation of a constitutional right, however, requires a new trial. "Some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable doubt." *State v. Taylor*, 280 N.C. 273, 280, 185 S.E. 2d 677, 682 (1972). This standard has been adopted by statute:

A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.

G.S. 15A-1443(b). Thus, constitutional error is deemed prejudicial unless there is no reasonable possibility that the error might have contributed to the conviction. *Lane, supra.*

Applying the foregoing standards to the facts of the present case, we see no reasonable possibility that the statement complained of could have led to the conviction of either defendant. Our Supreme Court has held that overwhelming evidence of guilt may render constitutional error harmless. *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569, *cert. denied*, 459 U.S. 1080, 74 L.Ed. 2d 642, 103 S.Ct. 503 (1982). Defendant Warren engaged in two face-to-face cocaine sales to Agent Jackson. He was followed on each occasion to Worthington's residence, and returned directly from the residence with the cocaine. Money from the second transaction was found on his person at the time of his arrest. When the officers searched Worthington's residence, they found a substan-

tial amount of cocaine, drug paraphernalia and the balance of the money with which Agent Jackson had paid for the cocaine. Thus, we declare our belief that the trial court's error in overruling defendants' objection to the improper remark of the district attorney was harmless beyond a reasonable doubt due to the overwhelming evidence of defendants' guilt of the offenses for which they were convicted. *See State v. Hooper*, 318 N.C. 680, 351 S.E. 2d 286 (1987).

### III

In summary, we conclude that judgment must be arrested as to each defendant's conviction of conspiracy to possess 200 grams or more, but less than 400 grams, of cocaine. Otherwise, we hold that no error prejudicial to defendants occurred at their trial.

Defendant Worthington's Appeal:

    Case 84CRS16844 — Counts 1 and 3 — No error
                       Count 2 — Judgment arrested

Defendant Warren's Appeal:

    Case 84CRS17732 — No error

    Case 84CRS17733 — No error

    Case 84CRS17734 — Counts 1, 2 and 4 — No error
                       Count 3 — Judgment arrested

    Case 84CRS16843 — No error

Chief Judge HEDRICK and Judge COZORT concur.